H. D. W. DOTY, ADMR. OF REBECCA BARNES, v. JOHN
HUBBARD.

*Mental Capacity.   Confirmation.   Presumption.*

1. In an action of ejectment the question being whether the defendant's grantor had
the requisite *mental capacity* to deed, the court instructed the jury : "Whether
she had *native* business capacity enough to understand it, or whether she
learned from competent sources what would be for her interest, if she got the
*capacity by education* at the time  .  .  .   that would be enough."   "If she
had competent advice from others, so that by their explanation she was made
to understand," &c.   *Held*, no error.

2. The deed was executed on the second day of January, the application to the Pro-
bate Court was made on the same day for the appointment of a guardian, and
he was appointed on the thirtieth of the same month.   *Held*, that the plain-
tiff was not entitled to a charge that the presumption in, favor of business ca-
pacity was changed.

3. A guardian cannot *confirm a deed* made by his ward except by following the regu-
lations prescribed by the statute, obtain a license, and execute a conveyance
himself.

4. The heirs did not confirm the deed by neglecting to act in the matter.

5. There could be no confirmation without a knowledge of the right to have the con-
tract set aside.

EJECTMENT to recover possession of a dwelling-house and a
small piece of land situated in Hyde Park.   Trial by jury, April
Term, 1881, Lamoille County, POWERS, J., presiding.   Verdict
for defendant.   The deed in question was executed January 2d,
1880.   It was sought to be impeached on the ground of the plain-
tiff's intestate, Mrs. Rebecca Barnes', mental incapacity.   She de-
ceased March 24th, 1880, aged 86 years.   The application of the
intestate for the appointment of a guardian was dated January
2d, 1880 ; and he was appointed January 30th, 1880.   There
were four heirs to the property.

The defendant's evidence tended to show that the appointment
of the guardian was made at Mrs. Barnes' request, in order to
have some one to look after her affairs and interests, as none of
her children were situated so they could do so ;  that Eben and
Robert, the only heirs in the State, were present and consented to

such appointment; that all parties understood that such appointment was made upon Mrs. Barnes' application; that at the time of the execution of said deed, said Rebecca sent for Calvin Campbell, who was her nephew and had assisted her in her business for several years, and who went and was present at the time of the execution of said deed, making no objections; that by his advice, C. S. Noyes, of Morrisville, was sent for and made said papers; but said Noyes testified that said Rebecca could not tell, or at least could not recall all the terms of the contract, and that he had to refer to the defendant's wife and said Campbell for said terms; that two of her four heirs, her sons, Eben and Robert C., approved of said deed and the arrangement thereunder; but the plaintiff's evidence tended to prove the contrary; that said Campbell, after his appointment as guardian, had sanctioned, or at least had not disapproved of said deed and contract. There was no evidence in the case tending to show that Mrs. Barnes' other heirs, aside from her sons, Eben and Robert C., knew anything about, or had anything to do with, the deed and contract between her and defendant and his wife.

The plaintiff requested the court to charge the jury:

" Second. If Mrs. Barnes was, on the 2d of January, 1880, incompetent to make an ordinary business contract, then it is of no importance whether the contract she in point of fact made was one advantageous to her or not, or whether or not she had the advice of old and trusted friends, except as having or not having, that advice may tend to show that she was of sound or unsound mind."

" Fifth. The inquisition of the Probate Court as to Mrs. Barnes' competency, under the circumstances, would change the presumption in favor of business capacity and would cast the *onus* on the defendant."

" Sixth. The guardian not having been appointed until after the contract was completed, no subsequent attempted ratification of the contract by him would be binding or effectual to confirm the deed."

The court charged, in part:

" Did she have mind enough to look out for all the details and minutiæ of a contract of that kind that a person under such cir-

cumstances as she was placed would naturally look out for, and desire to attain ?

" If she did have this capacity herself, without the aid and advice of others, that is enough to make the contract a valid one.

" Moreover if she was not accustomed to doing business and was not by virtue of her own business capacity competent to understand the details of a trade of this kind, if she had competent advice from others, so that by their explanation and advice she was made to understand—or to put it in another way, she received the capacity from the advice and explanations of other persons, that would be enough to make the contract binding. The question is, did she when she finally consummated the contract, do it understandingly ? Whether she had native business capacity enough to understand it, or whether she learned from competent sources what would be for her interest, if she got the capacity by education at the time from competent sources, that would be enough."

" Now, then, I come to the question of ratification.

" If you find that this deed and contract was a voidable transaction, one that Mrs. Barnes herself, if she had so elected, had the right to set aside, on the ground that she had not capacity enough to make it, and that her administrator has the right to set it aside, the question then arises on the claim of the defendant, has that contract and deed been ratified by the persons in interest, representing Mrs. Barnes' interest ? It is not pretended that she ratified it. It is said that she lived along under it, and took the benefit of it, but no person can be said to ratify or confirm an impeachable transaction, unless it appears that he knew it was impeachable.

" This rule is laid down in a good many authorities, that in order to have any line of conduct amount to a ratification or confirmation of any impeachable transaction, it must appear that the party knew that the matter was impeachable. Nobody can be said to have confirmed a transaction that they had no knowledge needed confirmation, or was susceptible of confirmation.

" Now, nothing is shown in reference to Mrs. Barnes, whether she supposed this contract was one that was binding upon her or not,—she lived along under it, and the fair inference from that circumstance would be that she was content.

" Now, how was it with her guardian, her legal representative ? Because it is not questioned but that Calvin Campbell was the legal guardian of Mrs. Barnes from the date of his appointment in January, 1880. Did he understand that there was any ques-

tion about her capacity to make the contract in the first instance ? Did he think and regard and treat this. contract as a proper one for her to make in the first instance, and a proper one to be con- tinued by her ?

" How was it as to the heirs interested in the estate so far as you hear from them ? "

The other facts are stated in the opinion.

*Brigham & Waterman*, for the plaintiff.

If a party is incompetent to *make* a contract, how can he be competent to *adopt* a contract suggested by another ? It would be *another's* contract. There could be no ratification. *Gibson* v. *Porter*, 6 Gray, 279 ; 5 Pick. 217 ; 1 Gray, 434 ; 6 Met. 421. The guardian cannot convey except he is authorized by the Pro- bate Court. He cannot do indirectly what he cannot do directly. 11 How. 1.

*Gleed*, for the defendant.

The charge of the court as to the advice of friends, and the effect, was proper. 11 How. 1 ; *Hovey* v. *Hobson*, 55 Me. 256 ; 1 Perry Trusts, 225, 408 ; 24 Vt. 32.

As to the question of ratification the defendant claims that the contract was such that it ratified itself, or rather at the death of Mrs. Barnes it could not be repudiated. It was a reasonable contract entirely free from fraud, and there is no intimation that defendant had any reason to suppose that Mrs. Barnes was not of sound mind. On the 2d day of January, 1880, the contract was made and defendant entered upon its execution, and supported and nursed Mrs. Barnes until she died, on the 24th day of the following March. The contract was executory until Mrs. Barnes died. It provided for her necessaries. The plaintiff cannot re- store the consideration to Mrs. Hubbard,—cannot place her *in statu quo*, and therefore he cannot rescind the contract. 1 Par- sons Con. 385 ; *Gove* v. *Gibson*, 13 M. & W. 623 ; 9 Ves. 477 ; 48 N. H. 133 ; 1 Gray, 437 ; 44 Pa. St. 9 ; Kerr F. & M. 299– 303 ; 1 Am. Lead. Cas. 218.

The opinion of the court was delivered by

TAFT, J. The plaintiff's exceptions relate to the charge of the court on the second, fifth and sixth requests.

I. The court complied with the second request in its very terms, and in regard to Mrs. Barnes' capacity told the jury that it was proper for her to receive competent advice from others, so that by their explanation and advice she was made to understand the contract; that when she finally consummated it she must do it understandingly, whether she had native business capacity enough to understand it, or whether she learned from competent sources what would be for her interest, if she got the capacity by education at the time from competent sources, that would be enough. No exception was taken to the charge in respect to what constituted requisite capacity in a party to execute a contract. The jury then must have known what capacity was required in this respect, and we think it no error when they were told that it might be imparted to her as the result of education. This principle is recognized in many cases. In *Arnold* v. *Richmond Iron Works*, 1 Gray, 434, the court speak of the capacity of a person to make contracts, "either by his knowledge or by the aid of legal counsel or such other aid and advice as he may avail himself of," as competent. In *Gratz* v. *Cohen*, 11 How. 1, in speaking of the capacity of a party and the circumstances under which a contract was made, the court say: "She applied to him, rather than he to her, to make the settlement, and he suggested the advice and aid of her business friends rather than attempting a secret and sudden settlement, and she did consult two intelligent business friends."

II. The fifth request that "the inquisition of the Probate Court as to Mrs. Barnes' competency, under the circumstances, would change the presumption in favor of business capacity, and would cast the *onus* on the defendant," was made upon the assumption that she was under guardianship when the contract was entered into. Such was not the fact. The contract was made on the second day of January, and the inquisition did not take place until the thirtieth of the same month, so that it is unnecessary to

pass upon the question, as the plaintiff is not entitled to a charge upon a state of facts which it is conceded did not exist.

III. The sixth request, " that the guardian not having been appointed until after the contract was completed, no subsequent attempted ratification of the contract by him would be binding or effectual, and would not confirm the deed from Mrs. Barnes to Mrs. Hubbard," was answered by the court's telling the jury that " if the guardian representing Mrs. Barnes was acting honestly, and the heirs of Mrs. Barnes interested in her estate, with full knowledge of the provisions of that contract, neglected to find any fault with it within a reasonable time after it was made, they have confirmed it."

No case directly in point has been cited. The question was suggested in *Gibson* v. *Soper*, 6 Gray, 279, where the court say, " how far the probate guardian of an insane person can ratify a deed made by his ward, or what acts of the guardian would be evidence of such ratification, it is not necessary to consider." No guardian in this State, except by express authority from the Probate Court, can convey lands owned by his ward, lands held by his ward in trust, or consummate an agreement made by his ward, by conveying land that the ward is under contract binding in law or equity to convey. R. L. c. 125. The legislative power has, with great care, guarded the rights of wards in their real estate. We think it would be in violation of the spirit of our legislation to hold that a guardian may do indirectly, passively, what the law forbids his doing directly, and that it is a safer rule to hold, that in order to confirm a deed made by his ward, while under disability, he must follow the regulations prescribed by the statute, obtain a license, and execute a conveyance himself.

Neither do we think that a confirmation of the deed could be effected by the neglect of those persons, who upon Mrs. Barnes' death became her heirs, to act in the matter. They had no interest in her estate, and could institute no proceedings in relation to it, except through the guardian ; and one of them had no knowledge of the transaction until after the decease of Mrs. Barnes.

This latter person certainly ought not to be bound by the acts

Doty *v.* Hubbard.

of the others. The defendant's counsel contend that the ratification of the deed was an immaterial fact; that it became so, because upon the death of Mrs. Barnes the contract could not be repudiated, insisting that it was a reasonable one, for necessaries, free from fraud; that they had no reason to suppose that Mrs. Barnes was of unsound mind at the time of the contract, and that the consideration could not then be restored, which they contend was requisite to a rescission. The authorities in support of such doctrine are very full; and had the case been submitted to the jury in that view, and the question of ratification excluded, it is possible that the verdict could not be disturbed. The exceptions do not show that all these facts were litigated upon the trial. They were to some extent; but the case was not submitted to the jury upon this theory. These facts may have been found against the defendant, and the verdict rendered based alone upon the ratification of the contract, which would have been error. Such facts may be so varied, and it being impossible for us to know what may be claimed in respect to them, that we do not pass upon the question of what effect the complete execution of the contract would have upon the rights of the parties, leaving that to be considered upon another trial.

Had there been no error in the charge in the respects indicated, we think the jury should have been further told that there could have been no confirmation of the contract unless the parties confirming it had knowledge of their right to have it set aside. *Wade* v. *Pulsifer*, 54 Vt. 45, and cases cited. For the errors mentioned the judgment of the County Court is reversed and cause remanded.