## EDMUND SLAFTER AND IRA B. SAVAGE'S ADMR. *v.* CLARENCE SAVAGE.

### May Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed October 18, 1915.

*Deeds—Validity—Competency of Grantor—Ratification by Guardian—Estoppel of Guardian—Powers of Guardian—Infants—Actions—"Next Friend"—Quality and Powers of —Special Administrator—Duties and Power of—Cancellation of Instruments—Equitable Jurisdiction—Accounting —Sufficiency of Evidence.*

A court of equity will set aside a decedent's conveyance of real estate where it appears that, to the knowledge of the grantee, decedent was demented when he executed it, and so continued till his death.

A guardian can dispose of his ward's real estate only by proceeding in accordance with statutory provisions, and cannot obliquely dispose of such real estate by ratifying his demented ward's conveyance thereof, although the arrangement constituting such ratification was approved by the judge of probate court, as that is not in the nature of a decree, nor of a valid license to sell; nor can such attempted ratification estop the guardian from denying the validity of such conveyance.

Neither at law nor in equity is a "next friend" regarded as a party for any purpose, but only as a manager or conductor of the suit during the minority of the plaintiff, and so that agency ceases automatically when the plaintiff attains majority, which fact should be suggested in court.

A special administrator, appointed under P. S. 2777-2778, was properly allowed to become a party plaintiff in a suit in equity by the intestate's heir to set aside the intestate's conveyance of realty and personalty, for an accounting and for general relief.

Where a guardian attempted to ratify his incompetent ward's conveyance of realty and personalty, the guardian attempted an invalid act that wholly failed, and so there could be no ratification as to the personalty alone.

A court of equity cannot be without jurisdiction of a proceeding that, among other things, seeks the cancellation of a deed of real estate.

In a suit in equity to set aside a voidable deed and for an accounting, defendant could not complain that the court did not decree the deed void, unless upon an accounting nothing should be found due from defendant, or unless anything found due him should be paid.

In a suit in equity by a decedent's heir to set aside decedent's deed of realty and personalty, and for an accounting, where defendant had cared for decedent from the execution of the deed to his death, evidence *held* sufficient to sustain the credits and debits allowed by the special master.

APPEAL IN CHANCERY, Windsor County. Heard at Chambers, October 3, 1914, on the pleadings, master's report, and defendant's exceptions thereto. Exceptions overruled, and decree for the plaintiff. The defendant appealed. The opinion states the case.

*Stickney, Sargent & Skeels* for the plaintiff.

*Davis & Davis* for the defendant.

HASELTON, J. This is a bill in chancery brought by the orator, Edmund Slafter, by his next friend, seeking to have set aside a deed to the defendant from Ira B. Savage, of whom the orator Edmund is the grandson and sole heir, and further seeking for an accounting and for general relief. From a decree, adverse to the defendant, which will hereinafter be referred to, the defendant appeals.

In 1899, Ira B. Savage, then about 81 years of age, was living upon a farm owned by him in the town of Windsor. In March of that year his daughter, Mrs. Mary Slafter, and her husband Charles F. Slafter, parents of the orator Edmund, moved into Ira B. Savage's home to manage the farm and care for him under an arrangement which is immaterial here. February 6, 1901, Mrs. Slafter died of typhoid fever, and March 3, following, her husband died, at the farm, of the same disease. These deaths left Ira and his grandson, Edmund, the orator here, the only members of the family. Ira was then about 84 years old, and Edmund was about 18 years of age. Soon after these deaths Ira committed the charge of his affairs to his

lawyer, J. C. Enright.   March 22, 1901, Enright was appointed administrator of the estate of Charles F. Slafter, and on the 28th of the same month was appointed guardian of the orator. Thereupon Enright undertook the management of the farm and Ira's affairs and employed hired help, nurses and physicians.

August 24, 1901, under an arrangement made with Enright, the defendant, Clarence Savage, and his wife, with a son and daughter, moved onto the farm to take care of Ira and the work on the farm.   Clarence was a nephew of Ira but had met him but a few times previous to this arrangement.

The defendant gave Ira the best of care and was diligent in attending to all his wants, which, on account of his age and the condition of health, were great and pressing.

Within a few days after Ira had thus been provided for, a housekeeper and nurse who had been caring for Ira went away, the physician who had been in attendance ceased his visits, and the grandson Edmund, then about 18 years of age, as already said, went to Montpelier to attend school.

Thereafter an attorney, who had been sent for by the defendant, came to the Savage farm and drew up some papers which Ira executed severally by making his mark.   These papers purported to be Ira's will and a deed from Ira to the defendant. At the same time a mortgage from the defendant to Ira of the property covered by the latter's deed was executed.   The deed from Ira to the defendant is that which is sought to be set aside in these proceedings.

It appears from the master's report that at the time of the making of this deed the defendant was demented and did not and could not understand or realize what he was doing when he executed the deed, that he was then wholly incompetent, and mentally incapable of making a valid deed or contract, that his mental condition so remained until his death, that at the time the deed was made the defendant knew what the mental condition of Ira was, and that the defendant procured the making of the deed.   These facts require that the deed should be set aside unless there are other facts conducing to a different result. *Normand* v. *Normand*, 89 Vt. 77, 94 Atl. 172; *Allen's Admr.* v. *Allen's Admrs.*, 79 Vt. 173, 64 Atl. 1110; *King* v. *Davis*, 60 Vt. 502, 11 Atl. 727.

The defendant says that after the improvement of Ira he was content to accept his support from the defendant and per-

mitted the defendant to manage and carry on the farm, and that so Ira ratified the deed and mortgage. But, as has been already stated, the report shows that there was no improvement in the mental condition of Ira after the making of the deed, but that his mental condition as it then was remained unchanged until his death, which occurred August 2, 1902.

A week after the deed was made it was left for record in the proper town clerk's office, and two days after it was so left, proceedings were begun in the proper probate court which resulted in the appointment of a guardian to care for the property of Ira. The defendant further claims that the deed was ratified by the guardian so appointed.

The guardian and the defendant made an arrangement by which, in addition to the requirements of the mortgage, which was conditioned for the life support of Ira, the defendant was required to furnish Ira with medical attendance and nursing and to give him a Christian burial. The arrangement was reduced to writing and signed by the defendant, was brought to the attention of the judge of probate and had his approval. But the guardian did not ratify the deed from Ira to the defendant, for the reason that it was beyond his power to do so, and the approval of the probate court that is referred to is not to be taken as in the nature of a decree, or of a valid license to sell.

A guardian can only dispose of the real estate of his ward by proceeding in accordance with statutory provisions, and ratification is regarded as an oblique method of disposal. *Doty* v. *Hubbard*, 55 Vt. 278; *Burnell, Admr.* v. *Malony*, 36 Vt. 636, 638; *King* v. *Sipley*, 166 Mich. 258, 131 N. W. 572, 34 L. R. A. (N. S.) 1058, Ann. Cas. 1912 D, 702, and note 704.

The defendant claims that there is an estoppel here, with the conduct of the guardian as one of its elements. But such conduct could no more contribute to an estoppel than it could work a ratification. The question of estoppel is not in the case.

One month after Ira's death the orator Edmund, being still a minor, brought the bill of complaint in this case by his next friend. This bill was amended in 1903, while Edmund was still a minor. In August, 1904, Edmund became of age, and the agency of the next friend ceased automatically. There was no change of parties, for a next friend is not regarded as a party for any purpose, but only as a manager or conductor of a suit, whether at law or in equity, during the minority of the one for

whom he acts. *Brown* v. *Hall,* 16 Vt. 673; *Bonnett* v. *Stowell,* 37 Vt. 258, 260; Peck, J., in *Carpenter* v. *Moore,* 43 Vt. 392, 394; *Williams* v. *Ritchie,* 3 Dill. 406, Fed. Cas. No. 17, 734; *Shuttlesworth* v. *Hughey,* 6 Rich. 329, 60 Am. Dec. 130; *Lang* v. *Belloff,* 53 N. J. Eq. 298, 31 Atl. 604.

The defendant, however, claims that the records show no sign that Edmund ever appeared by himself or had anything to do with the case after he became of age. But it was afterwards that W. L. Burnap, Esq., was appointed special master, and hearing was begun before him, and he having died without making a report, it was still later that the master whose report we have in the case, F. S. Platt, Esq., was appointed, and this master reports that the orator appeared before him by his solicitors on days named towards the end of 1906, when the orator was over 23 years of age. It is proper that in such a case the arrival of a plaintiff or an orator at his majority should be suggested in court, as some of the cases above referred to indicate. And, since the case went on as it did, we assume that this was done.

If the docket entries before this Court purported to give a history of the case we should refer to them, but although the case was in the court of chancery for a long term of years, we find on our docket no entries except the names of the parties and their attorneys and the word "Bill."

The report of special master Platt was filed in 1910. In 1913, the court of chancery rendered an interlocutory decree to the effect that the deed from Ira Savage to Clarence Savage be declared void upon the payment to Clarence of the balance, if any, found his due upon an accounting to be had, and that, if upon such an accounting a balance should be found due from the defendant, then the deed should be declared void. E. H. Edgerton, Esq., was appointed to take the accounting.

Special master Edgerton found, subject to the judgment of the court of chancery upon certain items, that the defendant should account for $2,187.62 and should be credited with $2,037.70, leaving a substantial balance against the defendant.

Before a decree was rendered on this report, Julius A. Wilcox, special administrator of Ira B. Savage's estate was admitted as a party complainant. The decree was, in short, that there was a balance against the defendant, and conformably to the interlocutory decree already mentioned, the deed from Ira B.

Savage to Clarence Savage was declared void. There was no decree for the payment by the defendant of the balance found due from him. The decree, however, provided that the orator Julius A. Wilcox, special administrator of the estate of Ira B. Savage, recover the rental value of the premises since the period covered by the report of special master Edgerton at the rate of $150 a year, after deducting therefrom the amount paid for insurance and taxes during the same time. The special master had found the annual rental value of the premises, for a period of several years next prior to the hearing before him, to be $150.

Special master Edgerton reports that at the accounting before him, which was in November, 1913, the orator Edmund was not present, but that special administrator Wilcox was. The defendant refers to the fact that the orator Edmund was not present in connection with his claim that, so far as appears, Edmund had nothing to do with the case after he become of age in 1904. This claim we have already considered. The fact now pointed out does not support the claim, nor has it any bearing upon any question of law in the case.

The defendant claims that the special administrator was not properly allowed to become a party, there being no allegation of debts of Ira B. Savage. Here, one of several wills made by Ira was presented for probate, and a large amount of testimony was taken upon the question of its allowance, but the findings stop short of saying whether the will was allowed or disallowed, and we take it that the special administrator was appointed by virtue of P. S. 2777, which authorizes the appointment of such an administrator where there is delay in granting letters testamentary or of administration, and that the authority of the special administrator has not ceased. Such an administrator is to act without reference to debts in collecting and taking charge of the estate of the deceased, and to that end he may maintain suits as an administrator looking to the collection of the goods, chattels, and credits, of the deceased and their preservation for the executor, or administrator, afterwards to be appointed. P. S. 2777, 2778.

Here, not only had the defendant fraudulently procured a conveyance of Ira B. Savage's real estate, but he had fraudulently converted to his own use personal property named in the deed of real estate amounting in value at the time of its con-

version to the sum of $500. The bill was so framed and the findings were such that it became proper for the special administrator to be allowed to enter as a party complainant in the case along with the heir Edmund Slafter. We do not discuss the matter of whether this question was properly raised. The defendant contends that it was.

The defendant suggests that, in any event, there was a ratification by the guardian of his ward's disposal of the personal property named; but the transaction as to the real estate and the personal property was one transaction, and in undertaking to ratify it as a whole, if the guardian is to be deemed to have attempted any ratification, he attempted an invalid act which fails altogether.

The defendant argues that on the findings there is an entire want of equitable jurisdiction, that there was a full, adequate, and complete remedy at law; and he suggests the action of ejectment. But, since the cancellation of a deed of real estate is sought in these proceedings, it is futile to argue that a court of equity is without jurisdiction.

The defendant refers to the interlocutory decree in accordance with which the final decree was shaped, and says that it was error to make the validity of a decree depend on a subsequent accounting, that this deed was voidable or not on facts pertaining to its execution. But this deed was voidable on such facts, and the defendant cannot complain that the court of chancery did not decree it void unless on an accounting nothing was found due the defendant, or unless anything found his due should be paid him.

Some questions are raised as to the accounting. The bill was brought by the orator Edmund about a month after his grandfather's death. But though the suit was promptly brought it remained in the court of chancery for a period of 12 years for causes some of which are explained, and some of which are not. During all this time the defendant continued to remain on the farm and to carry it on, and the matter of a final accounting became a matter of some difficulty. The special master in whom was reposed the duty of taking the accounting proceeded, as appears to us, with great fairness to the defendant. He allowed the defendant for the care of Ira, during somewhat less than a year, $924. For board, including washing, during the same time, he allowed the defendant $220. He also allowed the

defendant for cash paid out for Ira, $121.96, for cash paid out for burial expenses, $66.25, for cash paid for insurance and taxes, $549.79, for cash paid for shingles, $155.70. These items amounted to a total credit of $2,037.70.

The master submitted to the court of chancery the question of whether certain additional items of credit should be allowed and of whether some of the items should be disallowed. We are satisfied, as was the court of chancery, with these credits.

The master charged the defendant with money received from J. C. Enright, $20, with money received from the sale of 4 cows, $90, with loss on personal property, $335, with rent for the first five years of the defendant's occupancy of the real estate, $500, for the next seven years, $1,050, and for stumpage value of lumber and wood, $192.62. The total of these charges is $2,187.62.

The credit for cash paid for shingles and the charge for the stumpage value of lumber and wood were made proper by a stipulation filed in the suit during its pendency.

The personal property belonging to Ira B. Savage that was received by the defendant was of the value of $500. It consisted of live stock, farming tools and implements, and household furniture. The defendant sold four cows, and the proceeds of this sale make the item of $90, charged to the defendant as above shown. A few farming tools and a few articles of household furniture that were the property of Ira B. Savage are now in existence. These are of the value of $75, and no charge is made on their account. The charge of $335, for loss on personal property, represents the personal property of the value of $500, less $90 and $75.

The $335 represents that portion of the personal property not sold and not now in existence. The four cows were sold in May, 1902, before Ira's death; and after his death and the bringing of this bill, sometime in the latter part of 1902, the defendant was enjoined from selling or otherwise disposing of any of the property in question, and this injunction has remained. When special master Platt had the case under consideration he considered that the use of the farm with the personal property was worth $25 a year more than the use of the farm alone. But on the accounting taken at a much later time special master Edgerton, taking into consideration new and further facts, concluded that the use of the personal property

had been of no material value to the defendant and accordingly, as we have seen, he charged the defendant nothing for its use.

But he finds that the defendant should be charged with $335, the value of the personal property taken by the defendant and not sold and not in existence, and accordingly that sum is charged, and is the item of "loss on personal property" already referred to. The defendant cannot complain of the injunction, in view of the outcome of the case, and though he doubtless could have done better if he had been allowed to embarrass justice by selling or otherwise disposing of the property, that fact does not help him in the accounting.

The defendant took some exceptions to the master's report, but they are not meritorious, and as they are not briefed we are excused from noticing them.

The defendant does not claim in his brief that if the special administrator was properly admitted as a party, as we hold he was, it was not proper for the court of chancery to terminate this whole matter by decreeing, not only that the deed in question is void, but also that the orator Julius A. Wilcox, special administrator, recover the rental value of the premises in question since the period covered by the accounting, deducting therefrom, however, the sums paid by the defendant for insurance and taxes during the same time.

We have carefully examined all the claims of the defendant, and have mentioned all, except possibly some which are met by the determination of those discussed.

*Decree affirmed and cause remanded.*