**Alma Louise GOFF, Plaintiff in Error,**

**v.**

**Hayward Robert GOFF, Defendant in Error.**

**No. 40607.**

Supreme Court of Oklahoma.

Oct. 27, 1964.

Brown & Garrison, Tulsa, for plaintiff in error.

Landrith, McGee & Dowd, Tulsa, for defendant in error.

BLACKBIRD, Chief Justice.

After the parties to this action had agreed to attempt a reconciliation and had dismissed a previous divorce action in September, 1960, and had resumed living together as husband and wife in their rural home near the Tulsa-Osage County boundary, plaintiff in error, hereinafter referred to as defendant, left Oklahoma in May, 1961, and returned to her former home city of Columbia, Missouri, where the couple had married in 1946.

Thereafter, in June, 1961, defendant in error, hereinafter referred to as plaintiff, instituted the present action for divorce, an equitable property settlement, and custody of the couple's only child, a son, then 13 years old.

In the answer and cross-petition she thereafter filed in the case, the defendant also prayed for a divorce, and, among other things, for an equitable property settlement, and custody of the son.

At a hearing held August 18, 1961, on defendant's motion for alimony pendente lite, at the close of which she was awarded custody of the son until the first of the next month (at which time the boy was to be turned over to plaintiff), and one-half of a joint income tax refund the parties had received in the amount of $424.00, the court also directed that if the case was not ready for trial on its merits the following October 1st, plaintiff would then be required to start paying defendant the sum of $135.-00 per month.

On November 19, 1961, the day the case was subsequently scheduled for trial on its merits, defendant did not appear and the court granted plaintiff a default divorce decree. The next day, this decree was set aside on application of defendant's counsel, and the case was again set for trial thirty days later.

After the second trial started December 19, 1961, much of the evidence introduced concerned financial assets the couple had accumulated during their marriage, and how, according to plaintiff's evidence, they had been liquidated, and disposed of, during the year ending August 31, 1961 (which included the approximate 9-month period they lived together after the above-mentioned 1960 reconciliation agreement, and extended approximately three months past the filing of the present action).

The major part of these accumulations were represented by the couple's home. Shortly after the reconciliation agreement, or in, or near the early part of September, 1960, the home was sold to plaintiff's brother, and his wife Mr. and Mrs. Edmond Goff, upon defendant's insistance that, on account of the couple's son, they needed to live in a less remote area, where he could have the companionship of other children his age. After the sale of the home was closed for a total consideration of $7,650.-00, plaintiff and defendant continued to live in it at a rental of $65.00 per month, during and after the period that the purchasers were arranging for the money to pay its sale price in cash, and until defendant departed for Missouri, as aforesaid.

According to plaintiff's testimony and a written statement compiled by a firm of certified public accountants he introduced in evidence, $7,285.00 of the home's sale proceeds was delivered to defendant in cash during the one-year period from August 31, 1960, to August 31, 1961. Plaintiff introduced three writings contemplated to help show that $5570.00 of this cash was delivered to defendant in three payments occurring on September 2nd, 6th and 8th, respectively, in 1960. These payments became one of the principal subjects of controversy at the trial, and are prominently mentioned in this appeal. The writings evidencing them are in a form similar to that commonly referred to as customer's

drafts, or checks, on which, among others, there are blank spaces to be filled by the name of the bank on which they are to be drawn. According to plaintiff's testimony, defendant would not accept checks for these payments. Consequently he kept the checks as receipts from her for cash delivered to her in the amounts and on the dates shown thereon, after they had been endorsed and had cleared the bank on which they were drawn. He further testified that in order that she would not be apprised of the identity of the out-of-state bank he was using as the depository of these funds, the space provided on the draft, or check, forms for the bank's name was left blank until after defendant had endorsed them in exchange for the amounts of money specified thereon. Thereafter, the name of a Joplin, Missouri, bank was written in that blank space on the checks, and they were presented to said bank after Edmond Goff's endorsement was added to defendant's. Plaintiff's evidence was that the amounts of $4,100.00, $270.00, and $1200.00, respectively, for which the three checks appear on their faces to have been drawn, were the amounts of cash he actually handed to defendant when she endorsed them. She denied this, and testified that the amounts of cash she actually received from plaintiff at those times were: $100.00, $70.00, and $200.00, respectively. By her attorney's belabored and repetitious cross-examination of plaintiff, defendant's position was indicated to be that the amounts of the checks were raised, or increased, after she had endorsed them and before their presentation at the Bank.

Some of defendant's testimony at the December, 1961, trial concerned the state of her health. After rather detailed information on this subject had been elicited from her by her counsel, her testimony was interrupted and this part of the trial was ended by the following colloquy referring to defendant:

"THE COURT: I do not see the necessity of continuing this matter. *I think she is not competent to testify.*

"MR. ROUSE: I would like to ask what difficulties she experiences.

\*     \*     \*     \*     \*     \*

"THE COURT: I think she has told us for about an hour what difficulties she has had. I don't know how she could tell more unless she repeats the same things. I think I have a conception this woman is not well. That is what you are trying to convey to me. I think that is evident. I want to consult with your attorneys \* \* \* in my chambers right now, at this point. \* \* \*" (Emphasis ours.)

Apparently further trial of the case was thereafter scheduled for January 22, 1962. Presumably upon the theory that defendant was in need of medical care, the case was stricken from the setting of that date, and plaintiff was ordered to continue paying temporary support money to her. Thereafter, on February 5, 1962, plaintiff tendered defendant medical treatment, but she refused the tender, and thereafter, on March 6, 1962, he filed a motion referring to this fact; and charging that defendant was attempting to incur unreasonable medical bills beyond the scope of the court's previous order that plaintiff furnish her reasonable psychiatric care and pay her $100 per month for temporary maintenance during such care; and that she was following a course of conduct calculated to exhaust the parties' assets. In said motion plaintiff asked the court to allow him to discontinue the temporary support payments until defendant complied with the court's previous order and accepted the tendered psychiatric care.

On October 2, 1962, the case was again set for further trial and hearing on October 15, 1962. On the latter date, defense counsel presented a motion for continuance, with a statement of a Columbia, Missouri, physician attached to it, that defendant was under his care for a pulmonary infection and had been advised not to travel "for at least one week." The court thereupon entered an order continuing the case

until October 29, 1962, after finding that the defendant was out of its jurisdiction; that a competency hearing on her was pending in the County Court of Tulsa County; and that she should submit herself thereto for examination, " * * * or in the alternative that * * *" this cause " * * * should be brought to conclusion * * *" on October 29th.

On the latter date, defendant appeared only by her counsel. Over said counsel's objection, the court entered a decree awarding plaintiff a divorce on his previously alleged ground of incompatibility. Plaintiff was also awarded his son's custody subject to reasonable visitation rights of defendant to be exercised within the court's jurisdiction.

The court's only findings pertinent to the subject of dividing the marriage property were that after their "first divorce action" they had "disposed of such properties as they had accumulated * * *" during their marriage, that there was no property to divide, that each of the parties was gainfully employed, that each should bear his own attorney's fees and costs, other than the sums plaintiff had already paid defendant's counsel; that defendant's "demand for alimony should be denied", and that " * * * each party shall be responsible for his or her own maintenance and indebtedness."

In her brief, defendant states that in prosecuting this appeal from the trial court's decree, she does not seek its reversal insofar as it effects the dissolution of the parties' marriage. Under a single proposition, she seeks the decree's reversal only insofar as it pertains to financial matters, and to the son's custody. The grounds she asserts therefor, however, appear to include errors she claims the court committed before entering that decree—more particularly the terms of its hereinbefore described order of October 15, 1962, continuing the cause for further trial and hearing until the 29th day of the same month. She says that said court was without jurisdiction to order her to attend a

sanity hearing in the County Court, as she claims it purported to do, on October 15th. She seems to recognize that the order of that date was not a positive direction compelling her to submit to a sanity hearing and that under the order's wording she might have chosen—as she did—to ignore the County Court proceeding, and to have appeared in this case on the final day of its trial, instead; but, in her brief, her counsel says that such an appearance would have been " * * * with the reasonable expectation that she would be taken into custody for the mental health hearing, or, in any event, with full knowledge that the Trial Judge considered her an 'incompetent witness' ".

The record contains no support for defendant's quoted speculative representation, that if she had appeared in this case on the last day of its trial, she would have been taken into custody and held for the County Court sanity hearing.

Nor, in view of the record in this case, do we find in the hereinbefore quoted remark of the trial judge at the December, 1961, hearing (to which the last part of defense counsel's above-quoted assertion apparently refers) sufficient ground for vacating any part of the decree thereafter entered on October 29, 1962. If, at the December, 1961, hearing, defendant, or her counsel, thought that, by this remark, the judge was referring to some mental defect in her, rather than to a temporary emotional disturbance, or the physical infirmities about which she had just testified, and she or her attorney had then, or later, entertained the belief that because of said Judge's expressed opinion he could not fairly appraise and weigh her testimony, she might have suggested or requested that he disqualify himself, or have taken other steps contemplated to preclude him from sitting in judgment on the case; but the record reflects no such effort.

Defendant's closest approach to showing that her rights have in any way been prejudiced by the decree of October

29th (on which her appeal is necessarily based) is her claim that, by its previous order of October 15th, the court precluded her from "effectively presenting" to it, "the issue" of whether the amounts of the hereinbefore described checks had been raised, as her previous testimony inferred. She contends that the truth of such a conclusion is "aptly" demonstrated by examining the checks themselves, introduced in evidence as plaintiff's exhibit No. 9; but the only characteristic of either of the checks that she mentions in support of this contention is the fact that on the check for $4100.00, the "Four" of its words: "Four Thousand One Hundred * * *" begins between the printed border, and the left edge, of the check. This circumstance is wholly insufficient to establish that the amount of the check was increased from the one-hundred-dollar amount defendant testified she received from plaintiff, or to refute his positive evidence to the contrary, or to show that the trial court's judgment was erroneous, or clearly against the weight of the evidence

■ Though the record shows that on the trial's final day (Oct. 29, 1962) defendant's attorney objected, on her behalf, to a further trial on that day, it does not reveal, and we are not apprised of the grounds, if any, of his objection, or objections; and there is no indication that defendant either then, in connection with such objection, or at any time after October 15, 1962, ever moved for a continuance to enable her to obtain evidence to help support her own testimony as a contradiction of plaintiff's evidence, or for any other reason; and there is nothing to indicate that if the court had ordered a further continuance of the case on its own initiative, defendant would ever have been able to produce any such evidence.

Neither party to this appeal contends that defendant is now, or ever has been, mentally incompetent, and, as already indicated, there is nothing in the record before us to demonstrate the trial court erred, or abused his discretion, in the decree and/ or judgment appealed from. It must therefore be affirmed.

HALLEY, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and IRWIN, JJ., concur.