766 F.Supp. 744 (1991)
Karen KROLL, et al., Plaintiffs,
v.
ST. CHARLES COUNTY, MISSOURI, et al., Defendants.
Civ. A. No. 88-1875C(5).
United States District Court, E.D. Missouri, E.D.
June 4, 1991.
Ellsworth Cundiff, Jr., Cundiff, Turken & Londoff, St. Charles, Mo., Frederick W. Drakesmith, St. Charles, Mo., for plaintiffs.
Robert J. Krehbiel, Evans & Dixon, St. Louis, Mo., for defendants.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
LIMBAUGH, District Judge.
Plaintiffs appear before this Court by and through their counsel, Frederick Drakesmith and Ellsworth Cundiff. Defendants appear through their counsel, Robert J. Krehbiel and Stephen A. Martin. This Court now makes the following findings of fact:

St. Charles County Courthouse
1. The St. Charles County Courthouse was built in 1903.
2. The St. Charles County Courthouse, hereinafter referred to as the "Courthouse", has two floors and a basement that have been converted into courtrooms and offices.

A. Basement Level of the St. Charles County Courthouse

3. The basement level of the courthouse contains the law library, two (2) associate *745 circuit courts, the associate circuit clerk's offices and two (2) restrooms.
4. No electronic doors exist to the entrance of the law library, and the present door is such that a person confined to a wheelchair cannot gain entry to the law library.
5. The law library lacks the necessary space to house the necessary books and is therefore designed such that an individual confined to a wheelchair cannot move within the library once entry is obtained.
6. The aisles in the courthouse library are too narrow to adequately accommodate a wheelchair.
7. The hallway leading to the courthouse restrooms, the entry to the restrooms, and the aisles inside the restrooms are also too narrow to accommodate a wheelchair.
8. No electronic doors exist to the entrance of the two (2) associate circuit courtrooms, and the existing courtroom doors are such that a person confined to a wheelchair cannot gain entry to the courtrooms without assistance.
9. The hallways surrounding the associate circuit courtrooms and the associate circuit clerk offices lack adequate space and are designed such that an individual confined to a wheelchair cannot move within the courtrooms and within the hallways.
10. No electronic doors exist to the entrance of the two (2) associate circuit clerk offices, and the existing office doors are such that a person confined to a wheelchair cannot gain entry to the associate circuit clerk offices without assistance.
11. The associate circuit clerk offices lack adequate space and are designed such that an individual confined to a wheelchair cannot move within the clerk's offices due to the storage of records, file cabinets, and the arrangement of furniture.
12. The associate circuit clerks' offices could not employ a handicapped individual confined to a wheelchair because the employee would be unable to utilize the office due to the storage of records, file cabinets, and the arrangement of furniture.
13. The drinking fountain located on the basement level in the courthouse is too high and cannot be used by individuals who are confined to a wheelchair.

B. Second Floor of the St. Charles County Courthouse

14. Services on the second floor of the courthouse include the following: two (2) circuit courts, the probate court, the closed files, the information desk and public telephones.
15. No electronic doors exist to the entrance of the two (2) circuit courtrooms, Divisions 1 and 4, and the existing courtroom doors are such that a person confined to a wheelchair cannot gain entry to the courtrooms without assistance.
16. The witness stands and the jury boxes in both courtrooms are located on a riser, with no ramp, and this design prohibits access for a person confined to a wheelchair.
17. The courtrooms lack adequate space and are therefore designed such that an individual confined to a wheelchair cannot move within the courtrooms due to the narrow aisles between benches and the railing and the jury box.
18. No electronic doors exist to the entrance of the probate court and clerk's office, and the existing door is such that a person confined to a wheelchair cannot gain entry to the probate court and clerk's office without assistance.
19. The probate clerk's office lacks adequate space and is designed such that an individual confined to a wheelchair cannot move within the office and therefore cannot look up estates probated in St. Charles County.
20. The probate court could not employ a physically handicapped individual confined to a wheelchair because the prospective employee would be unable to utilize the office due to the above-mentioned interior design.
21. No electronic doors exist to the entrance of the circuit clerk's office/closed files, and the existing office door is such that a person confined to a wheelchair cannot *746 gain entry to the office without assistance.
22. The circuit clerk's office/closed files lacks adequate space and the interior design is such that an individual confined to a wheelchair cannot move within the office due to the storage of file cabinets, records, and the arrangement of furniture.
23. The circuit clerk's office/closed files could not employ a physically handicapped individual because the prospective employee would be unable to utilize the office due to the storage of file cabinets, records, and the arrangement of furniture.
24. The public telephones located on the second floor of the courthouse are located at such a height that they cannot be used by individuals confined to a wheelchair.
25. No public restrooms exist on the second floor of the St. Charles County Courthouse. Moreover, the second floor is designed such that there is no adequate space to install public restrooms with doors and hallways wide enough to accommodate physically handicapped citizens confined to a wheelchair.
26. The second floor of the courthouse can only be reached from the street level by way of stairs. There are no elevators, ramps, etc., to make the second floor of the courthouse from the street level accessible to handicapped citizens.

C. Third Floor of the St. Charles County Courthouse

27. Services on the third floor include two (2) circuit courts, the circuit clerk's office and two (2) restrooms.
28. No electronic doors exist to the entrances of the circuit courtrooms, and the existing courtroom doors are such that a person confined to a wheelchair cannot gain entry to the courtrooms without assistance.
29. The witness stands and the jury boxes in both courtrooms are located on a riser, with no ramp, and this design prohibits access for a person confined to a wheelchair.
30. The two (2) courtrooms lack adequate space and are therefore designed such that an individual confined to a wheelchair cannot move within the courtrooms due to the narrow aisles between benches and the railings and the jury boxes.
31. No electronic doors exist to the entrance of the circuit clerk's office, and the existing door is such that a person confined to a wheelchair cannot gain entry to the circuit clerk's office without assistance.
32. The circuit clerk's office lacks adequate space to store and keep the open circuit court case records and the storage of these files along office walls prevents adequate space for entry into the circuit clerk's office and movement around the circuit clerk's office by physically handicapped individuals therefore confined to a wheelchair.
33. The lack of space and interior design prevent individuals confined to a wheelchair from meeting with clerks or to review open case files.
34. The circuit clerk's office could not employ a physically handicapped individual confined to a wheelchair because the prospective employee would be unable to utilize the office due to the above-mentioned interior design.
35. The hallway leading to the courthouse restrooms on the third floor, the entry to the restrooms, and the aisles inside the restrooms are also too narrow to accommodate a wheelchair.
36. The drinking fountain located on the third floor in the courthouse is too high and cannot be used by individuals who are confined to a wheelchair.
37. The public telephones located on the third floor of the courthouse are located at such a height that they cannot be used by individuals confined to a wheelchair.
38. The third floor of the courthouse can only be reached by way of stairs. There are no elevators, ramps, etc., to make the third floor of the courthouse accessible to handicapped citizens.

D. All Floors of the St. Charles County Courthouse

39. None of the three floors of the Courthouse has a fireproof chamber for the *747 protection of those individuals confined to a wheelchair in the event of fire nor does the necessary space exist at the present courthouse facility to install such a fireproof chamber.
40. No sign language interpreters are employed or available at the courthouse to assist individuals with hearing impairments who were a party in a case, witness at a trial, juror, attorney, or individual seeking information from one of the court personnel.
41. No directories or signs with the Braille identification system exist in the courthouse to assist individuals with vision impairments.
42. The second and third floors of the courthouse are accessible by two (2) flights of stairs. No ramps or elevators are available to give access to the second or third floors to individuals who are physically handicapped and therefore unable to utilize stairways.

The Government Building
43. The Government Building, located at 205 North Second Street, St. Charles, Missouri, was built in 1928 and is a structure with three (3) floors.
44. The St. Charles County Prosecuting Attorney's Office and the Division of Child Support are located on the first floor of the government building.

A. First Floor of the Government Building

45. An individual may only gain access to the prosecuting attorney's office by a small series of steps.
46. No ramps or elevators exist to access the prosecuting attorney's office.
47. No electronic doors exist to the entrance of the prosecuting attorney's office, and the existing office door is such that a person confined to a wheelchair cannot gain entry to the office without assistance.
48. The prosecuting attorney's office lacks adequate space, and file cabinets and furniture are arranged in such manner which prohibits access for a person confined to a wheelchair to enter the individual assistant prosecuting attorneys' offices.
49. The prosecuting attorney could not employ a physically handicapped individual confined to a wheelchair because the prospective employee would be unable to utilize the office due to the above-mention interior design.
50. The entry to the restrooms on the first floor of the Government Building and the aisles inside the restrooms are all too narrow to accommodate a wheelchair.

B. Second Floor of the Government Building

51. The public defender is located on the second floor of the Government Building.
52. No electronic doors exist to the entrance of the public defender's office, and the existing door to such office is such that a person confined to a wheelchair cannot gain entry to the public defender's office without assistance.
53. The public defender's office lacks adequate space and is designed such that an individual confined to a wheelchair cannot move within the office.
54. The public defender could not employ a physically handicapped individual confined to a wheelchair because the prospective employee would be unable to utilize the office due to the above-mentioned interior design.
55. No public restrooms exist on the second floor of the Government Building. Moreover, the second floor is designed such that there is no adequate space to install public restrooms with doors and hallways wide enough to accommodate physically handicapped citizens confined to a wheelchair.

C. Third Floor of the Government Building

56. The county planning and zoning department, the highway department, the building department and the public administrator are located on the third floor of the Government Building.
*748 57. No electronic doors exist to the entrance of any of the third floor offices, and the existing office doors are such that a person confined to a wheelchair cannot gain entry to the offices without assistance.
58. The planning and zoning department, the highway department, the building department and the public administrator all lack adequate space and the offices on the third floor are designed such that an individual confined to a wheelchair cannot move within the narrow hallways and entrances to offices.
59. The lack of adequate storage space has caused the interior design of the offices to be in such a manner that a physically handicapped individual confined to a wheelchair could not move within the office because the aisles and walkways are too narrow.
60. The departments located on the third floor could not employ a physically handicapped individual confined to a wheelchair because the prospective employee would be unable to utilize the offices on the third floor due to the narrow aisles and walkways.
61. No public restrooms exist on the third floor of the Government Building. Moreover, the third floor is designed such that there is no adequate space to install public restrooms with doors and hallways wide enough to accommodate physically handicapped citizens confined to a wheelchair.

D. All Floors of the Government Building

62. None of the three floors of the Government Building has a fireproof chamber for the protection of those individuals confined to a wheelchair in the event of fire nor does the necessary space exist at the present Government Building to install such a fireproof chamber.
63. Public telephones and the drinking fountain are located at such a height that individuals confined to wheelchairs cannot use these facilities.
64. No sign language interpreters are employed or available in the government building to assist those persons with hearing impairments who were a party in a case, witness at a trial, juror, attorney, or individual seeking information from one of the court personnel.
65. No directory or signs exist with the Braille identification system in order to assist individuals with vision impairments.
66. Access to the second and third floors of the government building may be obtained by either a staircase or an elevator.
67. The elevator can only be operated by a St. Charles County employee and is not handicapped accessible in that the elevator dimensions are not adequate to accommodate a person confined to a wheelchair.

The Administration Building
68. The Administration Building, located at 118 North Second Street, contains a basement and two floors.
69. The recorder of deeds office, the collector of revenue office, the personal property division of assessor's office and two (2) public restrooms are located on the basement level.

A. Basement Level of the Administration Building

70. No electronic doors exist to the entrance of the recorder of deeds office and the existing door is such that a person confined to a wheelchair cannot gain entry to the office without assistance.
71. The recorder of deeds office lacks adequate storage space so records are kept in books along building walls and in aisles.
72. The aisles of deed indices are too narrow to accommodate an individual confined to a wheelchair.
73. Newer indices of records are located on angled tables which are at a height which prohibits those individuals confined to a wheelchair from using those indices.
74. The lack of storage space for the records has caused the office interior design *749 to be such that an individual confined to a wheelchair cannot move within the office because the aisles are too narrow in between furniture and record books.
75. The recorder of deeds office could not employ a handicapped individual because the prospective employee would be unable to utilize the office due to the above-mentioned interior design.
76. The marriage license window is located at such a height that an applicant for a marriage license who is confined to a wheelchair cannot reach the window.
77. No electronic doors exist to the entrance of the collector of revenue's office and the existing door is such that a person confined to a wheelchair cannot gain entry to the office without assistance.
78. The collector of revenue's office lacks adequate space so that tax records must be stored in cardboard boxes along building walls of one room.
79. The lack of adequate space has made the interior design such that furniture must be arranged in clusters with narrow aisles separating employees.
80. The collector of revenue could not employ a physically handicapped individual confined to a wheelchair because of the above-mentioned interior design due to the arrangement of furniture and narrow aisles.
81. The windows for the collector's office, where citizens may pay taxes and get tax receipts, are located at such a height that a physically handicapped citizen, confined to a wheelchair cannot reach the window.
82. No electronic doors exist to the personal property division of the assessor's office, and the existing office door is such that a person confined to a wheelchair cannot gain entry to the office without assistance.
83. The personal property division of the assessor's office lacks adequate space to store their records and maintain their computers and is therefore designed such that an individual confined to a wheelchair could not move within the office because of the above-mentioned interior design.
84. The windows to the personal property division of the assessor's office are located at such a height that a physically handicapped citizen, confined to a wheelchair, cannot reach the window.
85. The personal property division of the assessor's office could not employ a physically handicapped individual confined to a wheelchair because the prospective employee would be unable to utilize the office due to the above-mentioned interior design.
86. The hallway to the women's restroom, the entry to both men's and women's restrooms, the aisles and stall doors inside the restrooms are all too narrow to accommodate a wheelchair.

B. Second Floor of the Administration Building

87. The real estate division and mapping department of the assessor's office, the county auditor, the county commission, the county treasurer, the county clerk and voter registration, and the MIS Department are located on the second floor.
88. No electronic doors exist to the entrance of the mapping department and the existing door is such that a person confined to a wheelchair cannot gain entry to the office without assistance.
89. The mapping department lacks adequate space and the interior design of the department is such that an individual confined to a wheelchair cannot move within the office.
90. The mapping department of the assessor's office could not employ a handicapped individual confined to a wheelchair because of the above-mentioned interior design.
91. The lack of space has forced the public computers containing real estate tax records and information to be located in a narrow hallway and on a table located at such a height that the computers cannot be used by individuals who are confined to a wheelchair.
92. No electronic doors exist to the entrance of the county auditor's office, and *750 the existing door is such that a person confined to a wheelchair cannot gain entry to the office without assistance.
93. The county auditor's office lacks adequate space and is designed such that a physically handicapped individual confined to a wheelchair cannot move within the office due to the storage of file cabinets and records and the arrangement of office furniture.
94. The county auditor's office could not employ a handicapped individual confined to a wheelchair because the prospective employee would be unable to utilize the office due to the interior design due to the storage of file cabinets and records and the arrangement of office furniture.
95. No electronic doors exist to the entrance of the county commission office, and the existing door to the county commission office is such that a person confined to a wheelchair cannot gain entry to the office without assistance.
96. The county commission office lacks adequate space and is designed such that an individual confined to a wheelchair cannot move within the office.
97. The county commission could not employ a handicapped individual because the prospective employee would be unable to utilize the office due to the above-mentioned interior design.
98. No electronic doors exist to the entrance of the MIS office, and the existing door is such that a person confined to a wheelchair cannot gain entry to the MIS office without assistance.
99. The MIS office lacks adequate space so that records, equipment and furniture are stored and arranged in such a manner which prohibits a handicapped individual confined to a wheelchair to enter and use the office.
100. The MIS office could not employ a physically handicapped individual confined to a wheelchair because the prospective employee would be unable to utilize the office due to the storage and/or arrangement of records, equipment, and furniture.
101. No electronic doors exist to the entrance of the county treasurer's office and the existing door is such that a person confined to a wheelchair cannot gain entry to the treasurer's office without assistance.
102. The treasurer's office lacks adequate space so that financial records are stored and arranged in such a manner which prohibits a handicapped individual confined to a wheelchair to enter and use the office.
103. The treasurer's office could not employ a physically handicapped individual because the prospective employee would be unable to utilize the office due to the above-mentioned interior design.
104. No electronic doors exist to the entrance of the county clerk's office, and the existing doors are such that a person confined to a wheelchair cannot gain entry to the clerk's office without assistance.
105. The county clerk's office/voter registration office lacks adequate space so that county records, equipment and furniture are stored and arranged in such a manner which prohibits a handicapped individual confined to a wheelchair to enter and use the office.
106. The county clerk's office could not employ a physically handicapped individual because the prospective employee would be unable to utilize the office due to the storage and/or arrangement of file cabinets, equipment, and furniture.
107. No public restrooms exist on the second floor of the Administration Building. Moreover, the second floor is designed such that there is no adequate space to install public restrooms with doors and hallways wide enough to accommodate physically handicapped citizens confined to a wheelchair.

C. Third Floor of the Administration Building

108. The appraisal division of the assessor's office and the county counselor's office are located on the third floor.
109. No electronic doors exist to the entrance of the appraisal department, and the existing door is such that a person *751 confined to a wheelchair cannot gain entry to the office without assistance.
110. The appraisal division of the assessor's office lacks adequate space so that tax records, property records, equipment, and furniture must be arranged in hallways and small rooms in such a manner which prohibits a handicapped individual confined to a wheelchair to enter and speak with employees in the office concerning real estate taxes.
111. The appraisal division of the assessor's office could not employ a physically handicapped individual because the prospective employee would be unable to utilize the office due to the storage and/or arrangement of records, furniture and equipment.
112. No electronic doors exist to the entrance of the county counselor's office, and the existing door is such that a person confined to a wheelchair cannot gain entry to the office without assistance.
113. The county counselor's office lacks adequate space so that books and furniture must be arranged in such a manner which prohibits a handicapped individual confined to a wheelchair to enter and move within the office.
114. The county counselor's office could not employ a physically handicapped individual because the prospective employee would be unable to utilize the office due to the above-mentioned interior design.
115. No public restrooms exist on the third floor of the Administration Building. Moreover, the third floor is designed such that there is no adequate space to install public restrooms with doors and hallways wide enough to accommodate physically handicapped citizens confined to a wheelchair.

D. All Floors of the Administration Building

116. None of the three (3) floors of the Administration Building has a fireproof chamber for the protection of those individuals confined to a wheelchair in the event of a fire nor does the necessary space exist at the present Administration Building facility to install such a fireproof chamber.
117. The Administration Building does not employ and does not have available at the building a sign language interpreter to assist individuals with hearing impairments.
118. No directory or signs with the Braille Identification System exists at the Administration Building in order to assist individuals with vision impairments.
119. Access to the basement level and third floors of the Administration Building is limited to a stairway. There are no elevators or ramps which provide access to the basement level and third floors from the second floor for individuals who are either confined to a wheelchair or are physically handicapped such that the individual cannot utilize stairs.
120. The basement level of the Administration Building is accessible from the alleyway in the rear of the building by way of a service ramp, but the ramp has an improper slope, is not accessible to handicapped parking, and leads to an entrance and doorway at the lower level which is not accessible to individuals confined to a wheelchair. Also, the alleyway from which the service ramp is accessible is hazardous to individuals confined to a wheelchair in that it is heavily travelled by motorists.

Remedial Efforts
121. On December 7, 1989, the Plaintiffs and the Defendants filed a consent judgment decree.
122. On December 7, 1989, this Court signed the consent judgment decree.
123. That on September 6, 1990, the St. Charles County Commission ordered that a general election be held in St. Charles County on Tuesday, November 6, 1990, and that the first proposition on the ballot would be for a one-half cent (½¢) sales tax for the purpose of constructing, furnishing, and equipping new judicial and administrative facilities and renovating, furnishing and equipping the existing county courthouse.
*752 124. The official ballot language for Proposition 1 was as follows:
Shall the County of St. Charles, Missouri, impose a countywide sales tax at the rate of one-half cent (½¢) for a period of no longer than eight (8) years from the date on which such tax is first imposed for the purpose of constructing, furnishing, and equipping new judicial and administrative facilities and of renovating, furnishing, and equipping the existing county courthouse?

If you are in favor of the question, place an "X" in the box opposite "YES". If you are opposed to the question, place an "X" in the box opposite "NO".
125. The Defendants' efforts to promote the passage of the one-half cent (½¢) sales tax included but were not limited to:
(a) mailings to educate voters as to Proposition 1;
(b) county employees handing out leaflets providing information concerning Proposition 1 at public places such as grocery stores, discount stores, and shopping areas;
(c) informational posters and t-shirts with logos were utilized;
(d) a video portraying the conditions of the buildings and the need for more accessible facilities, and this video was shown on cable television;
(e) the former presiding commissioner of St. Charles County, Gerald E. Ohlms, personally speaking to a number of organizations concerning the government center proposal;
(f) obtaining the support and endorsements of private and public individuals and groups.
126. At the general election held on November 6, 1990, Proposition 1, to finance the construction of a new government facility, was rejected by the voters of St. Charles County by a margin of sixty-four percent (64%) against the proposition and thirty-five percent (35%) in favor of the proposition.
127. The Plaintiffs have filed on April 12, 1991, a Motion for Contempt in this matter against the Defendant St. Charles County in which they request, inter alia, that the said Defendant be held in contempt of court for failing to comply with the provisions of the consent order dated December 7, 1989.
WHEREFORE, this Court makes the following conclusions of law:
1. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331, 1343.
2. This lawsuit seeks relief pursuant to 42 U.S.C. Section 1983 and 28 U.S.C. Sections 2201 and 2202.
3. The Courthouse violates BOCA Accessibility Standards, American National Standards, ANSI A117.11961, and American Institute of Architects Standards.
4. The Courthouse violates federal handicapped laws, namely, 42 U.S.C. Section 1983, 28 U.S.C. Section 2201 and Section 2202, and 29 U.S.C. Section 794.
5. The Government Building violates BOCA Accessibility Standards, American Nation Standards, ANSI A117.1-1961, and American Institute of Architects Standards.
6. The Government Building violates federal handicapped laws, namely, 42 U.S.C. Section 1983, 28 U.S.C. Section 2201 and Section 2202, and 29 U.S.C. Section 794.
7. The Administration Building violates BOCA Accessibility Standards, American Nation Standards, ANSI A117.11961, and American Institute of Architects Standards.
8. The Administration Building violates federal handicapped laws, namely, 42 U.S.C. Section 1983, 28 U.S.C. Section 2201 and Section 2202, and 29 U.S.C. Section 794.
9. The Americans with Disabilities Act of 1990, Pulic Law 101-336July 26, 1990, which becomes effective January 26, 1992, prohibits discrimination against people with disabilities in employment, transportation, *753 public accommodations, telecommunications and state and local government services.
10. The Courthouse, the Government Building and the Administration Building will be in violation of the Americans with Disabilities Act, when the Act becomes effective.
11. That there is a notable lack of space in all three (3) buildings; for example, court files are stored in the halls, jurors and witnesses have no room where they may be precluded from contact with others, miscellaneous files and file cabinets are stored in the hallways of the other buildings, that the existing hallways cannot be widened and elevators cannot be installed without even further diminishing what little space does exist.
12. The design of the Government Building and the Administration Building is such that the buildings cannot practically, economically, or feasibly be renovated because the buildings lack adequate space for the necessary accommodations to be constructed.
13. That the Government Building and Administration Building could more economically and practically be demolished and reconstructed in order to comply with the BOCA Accessibility Standards, the American National Standards ANSI A117.1 1961, the American Institute of Architect Standards, and 29 U.S.C. Section 794.
14. That St. Charles County has made a significant effort and expressed a willingness to explore every fiscal alternative in order to remedy the deprivation of the constitutional rights suffered by the handicapped and disabled citizens desiring to use the facilities and services of St. Charles County.
15. That St. Charles County has explored every fiscal alternative and made significant efforts to get a sales tax passed to fund such renovation and reconstruction.
16. A District Court may have the authority to order a property tax increase after exploring every other fiscal alternative. See, Liddell v. Missouri, 731 F.2d 1294 (8th Cir. en banc, 1984); cert. denied at 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984).
17. St. Charles County has exhausted all available means of raising additional revenue; and St. Charles County has little or no budget surplus and federal aid for providing access for the handicapped is non-existent in St. Charles County, since real estate values in St. Charles County have risen in recent years but the tax rates have been rolled back pursuant to Section 67.500, et seq. R.S.Mo., and referenda to secure additional funds for the renovation and reconstruction of handicapped accessible facilities have been unsuccessful.
18. No other permissible alternative would accomplish the required task of renovating and reconstructing facilities in order to make those facilities accessible to the physically handicapped citizens.
IT IS HEREBY ORDERED AND ADJUDGED THAT the Court will consider the imposition of a property tax increase of twenty-five cents (25¢) per one hundred dollars of assessed valuation on all property located in St. Charles County for a period of ten (10) years if St. Charles County fails to fund the improvements required by this order through an increased sales tax or in some other way by Tuesday, August 6, 1991.
IT IS FURTHER ORDERED AND ADJUDGED that the roll back of local taxes also may be enjoined for the purpose of assisting in the funding of improvements in the event proposed sales tax revenue is insufficient.