1997 OK 60

**Eric CARY, a minor, By and Through his mother and next friend Lorie S. CARY, Plaintiff–Appellant,**

v.

**ONEOK, INC., Defendant–Appellee.**

Nos. 81356, 81655.

Supreme Court of Oklahoma.

May 6, 1997.

As Corrected on Denial of Rehearing July 1, 1997.

Tom King, King, Roberts & Beeler, Michael D. Lewis, Gary Peterson, Oklahoma City, for Plaintiff–Appellant Eric Cary.

D. Lynn Babb, G. Calvin Sharpe, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, for Defendant–Appellee Oneok, Inc.

SUMMERS, Vice Chief Justice.

¶ 1 The question is whether it was error to exclude a badly burned child from a portion of his damage suit trial because of his physical appearance. We hold that it was, and reverse.

¶ 2 Eric Cary is a boy who was severely burned when the water heater in the garage of his home exploded. He was trapped in the garage until rescued by his mother, and suffers from permanent disfigurement. At the time of the incident he was almost three years old. His mother brought this suit on his behalf [1] alleging negligence on the part of the defendant Oneok in inspecting and lighting the water heater.

¶ 3 Prior to trial Oneok presented a motion for bifurcation, asking that the liability phase and the damage phase each be tried separately. Oneok also asked that Eric, then six and one-half years old, be kept out of the court room for the liability phase, fearing that the jury would be sympathetic to plaintiff because of his disfigurement. The trial court granted the bifurcation and then ordered that Eric be excluded from the liability portion of his trial. After the trial court so ruled Oneok's counsel suggested that he be allowed to inquire of the mother as to whether the child has no specific recollection of the incident, to be "of some benefit to the jury as to explain why the child is not here because of his tender years." But the court settled that request with these words: "[T]hat's not the reason he's not here. He's not here because he's scarred so badly I think it would be unfairly prejudicial." Plaintiffs counsel objected to the ruling.

¶ 4 After a trial on the issue of liability the jury returned a verdict in favor of the defendant. Plaintiff appealed. The Court of Appeals affirmed. We have granted certio-

---

1. An action must be prosecuted in the name of the real party in interest. 12 O.S.1991 § 2017(A). Title 10 O.S.1991 § 17.1 requires

rari and now reverse.[2]

¶5 Plaintiff asserts that the Oklahoma Constitution, Art. 2, § 6[3], requires that a party be permitted to attend his own civil trial. He continues by pointing out that children younger than six have been permitted to testify in trials. In this case plaintiff was the only eye witness to the incident. Regardless of whether he was to testify, Eric's counsel asserts that his presence would be of aid to his attorney by showing the jury the actual person whose life has been affected. He asserts that a jury may respond differently when faced with the person who suffered the harm.

¶6 Oneok asserts that Eric's appearance would serve no legitimate purpose, and would inflame the passions of the jury. Oneok argues that the Oklahoma Constitution does not guarantee an individual's right to be present during the trial of his or her case. It contends that Lorie Cary's presence during the trial protected the injured child's rights, as she was his mother and legal representative. Oneok also surmises that Eric would have been of no assistance at trial due to his young age at the time of the incident and his cloudy recollection of the events.

¶7 This Court has never been faced with this precise issue. We have said, however, that "a party to an action should have a reasonable opportunity to attend its trial." *Goff v. Goff,* 396 P.2d 513, 517 (Okla.1964); *Jones v. Nicoma Park Radio & Television Serv.,* 408 P.2d 770, 774 (Okla.1965). Both *Goff* and *Jones* involved parties who voluntarily absented themselves from the proceedings, and we held that it was not error for the trial to be held in their absence.[4] That is not the case here. Furthermore, we have never been asked to interpret Art. 2, § 6 to require a party's presence at his or her trial.

Rather, we have recognized Section 6's protection as respecting an individual's right to have access to the judicial process for all wrongs recognized by law. *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.,* 782 P.2d 915, 919 (Okla.1989).

¶8 Courts differ in their approach to this question. Some courts hold that the right to attend trial is an absolute right, arising out of state or federal constitutional provisions. *Rozbicki v. Huybrechts,* 218 Conn. 386, 589 A.2d 363 (1991) (state constitutional right to jury trial mandated that party be allowed to be present during trial); *Carlisle v. County of Nassau,* 64 A.D.2d 15, 408 N.Y.S.2d 114 (N.Y.S.Ct.1978) (the constitutional right to jury trial carries with it the right to be physically present during the trial regardless of whether you are adequately represented by counsel); *In re Rosemary Watson,* 91 Cal.App.3d 455, 154 Cal. Rpt. 151 (1979) (fundamental due process right to be present during a commitment proceeding which could result in the loss of substantial personal liberty).

¶9 In *Helminski v. Ayerst Laboratories,* 766 F.2d 208 (6th Cir.1985), the Circuit Court observed that although the Due Process clause does not give a civil litigant the absolute right to be present personally during his trial, due process is offended if he is excluded arbitrarily or in the absence of extreme circumstances. It went on to conclude that a plaintiffs physical appearance alone does not warrant his expulsion. *Id.* At 215.

¶10 Others, without relying on constitutional provisions, hold that absent an overwhelming reason to the contrary, a party has a right to attend the trial of his lawsuit. *Mason v. Moore,* 226 A.D.2d 993, 641 N.Y.S.2d 195 (N.Y.S.Ct.1996) (injured infant was entitled to be present during trial absent

that an action by a minor child be prosecuted by the next friend or representative of the child.

**2.** We do not address the issue of bifurcation because it was not raised by Plaintiff in his petition for certiorari. Issues resolved by the Court of Civil Appeals adverse to the certiorari petitioner but not raised on certiorari are beyond this Courts' cognizance. *Jackson v. Jones,* 907 P.2d 1067, 1074 (Okla.1995).

**3.** Article 2, Section 6 states:

The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice.

**4.** The Court of Criminal Appeals has held likewise. *Sonnier v. State,* 597 P.2d 771 (Okla.Cr. 1979).

an express waiver or unusual circumstances, and reliance on stereotypical assumption that jury will be prejudiced is insufficient); *Marks v. Mobil Oil Corp.,* 562 F.Supp. 759 (E.D.Pa.1983) *aff'd* 727 F.2d 1100 (1983) (severely injured passenger was entitled to be present at the liability phase of his trial); *Florida Greyhound Lines v. Jones,* 60 So.2d 396 (Fla.1952) (woman on a stretcher had a right to be present at her trial).

¶ 11 It appears to be universally settled that a party's disruptive behavior is a legitimate basis for excluding the litigant. *Illinois v. Allen,* 398 U.S. 915, 90 S.Ct. 1684, 26 L.Ed.2d 80 (1970) (Criminal defendant may be excluded because of disruptive behavior); *Kimithi v. State,* 546 S.W.2d 323 (Tex.Cr.App.1977); *Morley v. Superior Court of Arizona,* 131 Ariz. 85, 638 P.2d 1331, 1334 (1981). Closer to our case here, many jurisdictions have agreed that exclusion of a party is permissible if prejudice will occur by the party's physical appearance and the party's condition is such that he or she cannot comprehend the proceedings and aid counsel in the representation. *Helminski v. Ayerst Laboratories, supra* (due process would be otherwise offended); *Morley v. Superior Court of Arizona,* 131 Ariz. 85, 638 P.2d 1331 (1981); *Dickson v. Bober,* 269 Minn. 334, 130 N.W.2d 526 (1964) (party who was incapable of understanding proceedings due to his injury was properly excluded); *Reems v. St. Joseph's Hosp. & Health Center,* 536 N.W.2d 666 (N.D.1995) (child injured at birth was properly excluded because child could not assist in or understand proceedings); *Caputo v. Joseph J. Sarcona Trucking Co.,* 204 A.D.2d 507, 611 N.Y.S.2d 655 (N.Y.S.Ct.1994) (trial court properly excluded a party that was mentally disabled and could not assist counsel).

¶ 12 Regardless of their approach, courts agree on two points: (1) The ideals behind due process and a fair trial permit a party to be present in the courtroom absent extreme conditions and (2) the possibility of juror sympathy alone is not juror prejudice, and is insufficient to exclude a party from the courtroom. *Helminski,* 766 F.2d at 216; *Morley,* 638 P.2d at 1334; *Reems,* 536 N.W.2d at 669. It also appears that a party's physical condition alone does not warrant exclusion. *Helminski,* 766 F.2d at 214.

¶ 13 Oklahoma has never held, nor do we so hold here, that a party's right to be present in the courtroom is absolute. We can contemplate situations in which the disruptive behavior of a party would necessitate the party's exclusion from the courtroom, and a trial may proceed after a party has voluntarily waived the right to be present. *Goff* 396 P.2d at 517. However, we find no authority for the proposition that a party may be excluded *solely* by reason of his disfigurement. Absent a voluntary waiver we hold that only in the case of extreme circumstances may a party be excluded from the proceedings. *See Mason v. Moore,* 641 N.Y.S.2d at 196; *Marks,* 562 F.Supp. at 768. Exclusion of a party is disfavored. The party seeking exclusion must bear the burden of showing that only through exclusion can a fair trial be obtained. *Helminski. supra* at 216.

¶ 14 A party's physical appearance cannot be the sole basis for exclusion from the courtroom, and does not amount to an "extreme circumstance" permitting exclusion. We agree with the Florida Supreme Court which stated:

> One who institutes an action is entitled to be present when it is tried. That, we think, is a right that should not be tempered by the physical condition of the litigant. It would be strange, indeed, to promulgate a rule that a plaintiff's right to appear at his own trial would depend on his personal attractiveness, or that he could be excluded from the court room if he happened to be unsightly from injuries which he was trying to prove the defendant negligently caused.

*Florida Greyhound Lines v. Jones,* 60 So.2d at 396 (Fla.1952). In the present case the plaintiff was excluded because he was a party to the lawsuit, and due to his appearance the judge feared that the jury would be overly sympathetic. If Eric had been merely an observer and not a party, he would have been permitted in the courtroom. It is impermissible that he is kept from observing and participating in the proceedings solely be-

cause of his status as a party who was burned and is thus physically scarred.

■ ¶ 15 Rather than assuming the jury will be prejudiced by a physically scarred plaintiff, this holding aligns us with those courts which repose trust in the jury. A jury will generally follow the court's instructions and decide a case based on the law presented. *Helminski*, 766 F.2d at 216. "In our view where, as here, the movant relies solely on a stereotypical assumption that a party's disability will prejudice the jury, there are insufficient grounds for excluding that party from the trial." *Mason*, 641 N.Y.S.2d at 196.

■ ¶ 16 We agree that a fundamental cornerstone of due process is an impartial jury. *Agee v. Gant*, 412 P.2d 155, 162 (Okla. 1966). We do not agree with Oneok's assumption that the likelihood of jury sympathy is the equivalent of prejudice, and amounts to a denial of due process. A juror's sympathetic feeling toward a party does not necessarily lead to the conclusion that the jury will disregard the law to reach a verdict based on sympathy alone.

¶ 17 *Helminski* posits that if a plaintiff's physical condition is such that prejudice is a real concern, the trial judge makes two further inquiries. Then, only if the court has found that in addition to the physical condition the party's mental state is such that he or she can neither comprehend the proceedings nor aid counsel in presenting the case, does the court have discretion to exclude him or her from the liability phase of the trial. *Id.* at 16.

¶ 18 There may need to be a re-examination of those cases, including *Helminski*, which hold that a disfigured plaintiff may be

excluded if he or she cannot aid the attorney or comprehend the proceedings. These cases were decided before the enactment of the Americans with Disabilities Act, a law that specifically prohibits discrimination on the basis of a physical or mental handicap. Title 42 U.S.C. § 12132 (1990).[5] Those cases which followed this reasoning and were decided after the ADA's enactment did not address the issue.[6]

¶ 19 Even were we to conclude that the *Helminski* standard survived the ADA, and was the preferable approach, we find that it has not been satisfied in this case. The record is far from clear that Eric could not meaningfully comprehend what was going on. He was six and one-half years old at the time of trial, and there is no allegation of a mental handicap which would have precluded him from comprehending the basic events of the trial as they occurred. The defendant has the burden of showing grounds for exclusion.

¶ 20 Other courts have permitted young injured children who were parties to be present in the courtroom despite that fact that they could not fully comprehend the proceedings. *Chicago Great Western Ry. Co. v. Beecher*, 150 F.2d 394 (8th Cir.1945) (three-year-old child permitted in courtroom); *Anderson v. Sears, Roebuck & Co.*, 377 F.Supp. 136 (E.D.La.1974) (disfigured child injured by heater burns permitted to remain in courtroom). While the comprehension of a child might be less than that of an adult, a child Eric's age likely has some understanding of the basic events of a trial as they occur, and there is nothing in the record to the contrary.

---

**5.** On appeal Cary claims that his exclusion from the courtroom during his trial was a violation of the Americans with Disabilities Act. He did not raise this issue at trial. We therefore do not address the merits of this claim. *Bane v. Anderson, Bryant, & Company*, 786 P.2d 1230, 1237 (Okla.1989). We mention the Americans with Disabilities Act only to observe that there may be some case law that will need re-evaluation in light of the Act.

Section 12132 reads:
Subject to the provisions of this subchapter, no qualified individual which a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

**6.** So far, no court has resolved the issue of a party's exclusion from trial in light of the ADA. However, the ADA has been held to apply to the physical surroundings of a federal courthouse. *Kroll v. St. Charles County*, 766 F.Supp. 744 (E.D.Mo.1991). A judge who violated the ADA by not accommodating a handicapped person who needed special access to a restroom during trial was not immune from liability for this violation. *Livingston v. Guice*, 68 F.3d 460 (4th Cir. 1995).

¶ 21 Oneok also failed to show that Eric Cary would have been of no assistance to his attorney. Oneok admits that the child has a recollection of the incident, even though his mother says that recollection has changed as time passed. Assistance to an attorney does not necessitate that the party be there to testify. The importance of the physical presence of a party cannot be anticipated, as developments may occur at trial that were unplanned by the attorney. The attorney "cannot know all that his client knows. Oftentimes it is essential for the proper presentation of the case to have the client at hand ready to prompt the cross-examiner and to respond to his inquiries." *Rozbicki v. Huybrechts,* 218 Conn. 386, 589 A.2d 363 (1991). Again, the defendant who would exclude a party bears the burden of persuasion.

¶ 22 The *Helminski* court spelled out under what circumstances a court could, in its discretion, exclude a disabled plaintiff, and concluded that the lower court committed error in excluding him for reasons of physical appearance alone. It went on to hold the error harmless, and affirmed the judgment for the defendant. In that case, however, the disabled child was developmentally retarded from birth, was autistic, was not toilet trained, could not speak, and required 24–hour a day care. Eric, as far as we can tell from the record, was a normal six and one-half year old boy but for his burns and scars. To extend the harmless error doctrine to his case would trivialize his right to observe and be a part of the proceedings which likely will profoundly influence much of the rest of his life.

¶ 23 Based on the record before the trial court and before us on review, we conclude that Eric was entitled to attend the liability phase of his own trial, and his exclusion requires reversal. The opinion of the Court of Appeals is vacated, the judgment for the Defendant is reversed, and the cause is re-manded to the trial court for further proceedings.

¶ 24 KAUGER, C.J., and HODGES, ALMA WILSON and WATT, JJ., concur.

¶ 25 LAVENDER, SIMMS, HARGRAVE and OPALA, JJ., dissent.

OPALA, Justice, dissenting.

¶ 1 Desiring, no doubt, to avoid a result perceived to be harsh, the court today (1) *invents a new doctrine* that a litigant may *never* be excluded from the courtroom—solely on the grounds of disfigurement—during any phase of the civil trial, (2) *subtly and gratuitously injects* the Americans with Disabilities Act [ADA][1] into its analysis and (3) *cavalierly remands* this cause for a retrial that would allow the plaintiff's disfigured minor to be exhibited before the jury, even though its *new standard* against exclusion was unknown to the law when the case was tried originally.

¶ 2 Were I writing for the court, I *would not disturb* the trial court's ruling that excluded the minor from the jury's sight. *No prejudice was shown from his absence.* His status is now and was below that of a *non-party*—a person *non sui juris* whose action was brought in his name, as it must be, *by another (as next friend).* The latter, though a nominal party, wields *alone* the power to manage, conduct and control the entire litigation. Even if the boy were *sui juris,* the trial court's exclusion would not be assailable. This is so because the judge faithfully followed *the standards developed by extant national jurisprudence,* which the court chooses to ignore in today's pronouncement. Because its essence trounces the defendant's fundamental-law right to a fair trial by an impartial jury (guaranteed by both Art. 2, § 7, Okl. Const.,[2] and by the Fourteenth Amendment of the U.S. Constitution),[3] I *recede* from the court's opinion.

---

1. 42 U.S.C. §§ 12101–12213.

2. The pertinent terms of Art. 2, § 7, Okl. Const., are:
   "No person shall be deprived of life, liberty, or property, without due process of law."

3. The pertinent terms of the Fourteenth Amendment, U.S. Const., are
   " * * *[N]or shall any State deprive any person of life, liberty, or property, without due process of law* * *"

## I.

## THE ANATOMY OF LITIGATION

¶ 3 Lorie S. Cary brought an action against ONEOK on behalf of her minor son, Eric Cary [Cary or minor]. The claim was rested on the defendant's negligent inspection (without warning of a possible danger) of a hot water heater, which caused a fire that severely burned and disfigured Cary.[4] Cary was then not quite three years of age. Before jury trial the nisi prius judge (1) ordered the proceedings *bifurcated into separate liability and damages phases* [5] and (2) *excluded Cary from the courtroom* during the first stage because his disfigured countenance would unduly prejudice the jury against ONEOK.[6] The mother, as *dominus litis* (master of the litigation),[7] was present during the entire liability phase of the lawsuit. She did not schedule Cary as a witness in the case.[8] Judgment was entered on a general verdict for ONEOK. The mother appealed [9] for review of *both* the bifurcation order *and* of the ruling that excluded her son from the jury's sight during the liability stage of trial.[10] The Court of Civil Appeals affirmed. The mother, who secured certiorari for review of the nisi prius order that barred Cary from the courtroom, no longer assails the legal correctness of the trial court's bifurcation order.[11]

**4.** Agents of ONEOK's subsidiary, ONG, through whom ONEOK markets natural gas for consumer use, performed the inspection and failed to deliver the claimed to be required warnings about the water heater's propensity to start a fire. ONG agents customarily examine gas water heaters and will refuse to connect them to the utility's fuel supply if a defect or dangerous condition is discovered.

**5.** The terms of 12 O.S.1991 § 2018 provide in pertinent part:
"* * * D. SEPARATE TRIALS. The court, in furtherance of convenience *or to avoid prejudice*, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counter-claim, or third-party claim, or of *any separate issue* or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury." (Emphasis added.)
Upon a party's motion, a trial court may, as authorized by the terms of § 2018, *supra*, order a separate trial of any issue, but it is not required to do so. Only where there is a *clear abuse of discretion* will this court disturb a decision on this point in contest. *Faulkenberry v. Kansas City Southern Ry. Co.*, Okl., 661 P.2d 510, 513 (1983), *cert. denied*, 464 U.S. 850, 104 S.Ct. 159, 78 L.Ed.2d 146 (1983).

**6.** At the time of trial Cary was approximately six and one-half years old.

**7.** Literally translated, *dominus litis* means master of the suit, *i.e.*, one who by law is entitled to manage and control the litigation to the exclusion of others. In the context of a wrongful death action, *dominus litis* is the person who brought the action as the statutorily authorized plaintiff. *See* Black's law dictionary 437 (5th ed. 1979). *See also Davis v. Davis*, Okl., 708 P.2d 1102, 1107 (1985) (one who is "placed in charge of prosecuting" the case is the "*dominus litis* ");

*Ex parte Lewis*, 85 Okl.Cr. 322, 188 P.2d 367, 380 (1947); *Virginia Electric & Power Co. v. Bowers*, 181 Va. 542, 25 S.E.2d 361, 363 (1943).

**8.** Cary's name does not appear on the pretrial conference order's list of witnesses. While it is within a trial court's discretion not to allow a party unlisted on the pretrial order to testify (*Crussel v. Kirk*, Okl., 894 P.2d 1116, 1119 n. 10 (1995)), clear abuse of this responsibility is reversible error. *Crussel*, *supra* at 1120; *Middlebrook v. Imler, Tenny & Kugler, M.D.'s*, Okl., 713 P.2d 572, 582 (1986). *See also Whiteley v. OKC Corp.*, 719 F.2d 1051, 1055 (10th Cir.1983); *Turney v. Anspaugh*, Okl., 581 P.2d 1301, 1308 (1978).

**9.** The mother brought her original petition in error in Cause No. 81,356 on March 31, 1993. By its April 16, 1993 response ONEOK sought the appeal's dismissal for *prematurity*. The mother then brought an amended petition in error on April 29, 1993, and commenced *another* appeal (No. 81,655) with a *protective* petition in error of May 26, 1993. By order dated June 1, 1993 this court *denied* ONEOK's dismissal quest and *consolidated* the *two identical appeals* on June 10, 1993 under the number assigned to the latter cause. ONEOK *has not renewed its dismissal motion*.

**10.** *For the first time on appeal* the mother raised the question whether the trial court's exclusion order violates the ADA, *supra* note 1. *For a discussion of this act's irrelevance, see* Part VI, *infra*.

**11.** Because the mother *does not* seek certiorari review of the trial court's *bifurcation order*, the correctness of that ruling lies now *beyond* this court's reviewing cognizance on certiorari. *Hough v. Leonard*, Okl., 867 P.2d 438, 445–446 (1993).

## ¶4 II.

## NO PREJUDICE—OF CONSTITUTION-AL, STATUTORY OR COMMON–LAW CHARACTER—HAS BEEN SHOWN FROM CARY'S COURTROOM EXCLU-SION

### ¶5 A.

### *No One Was Excluded From The Courtroom Who Can Claim The Status of a Party Plaintiff*

¶ 6 By the common law of England (as well as by Oklahoma's statutory law) [12] *infants*

can neither sue nor defend except by guardian.[13] The law requires that children be represented by a legally competent person.[14] The rationale for this rule comes from the common-law interposition of *prochein ami* [15] —the child's "next friend" or legal representative.[16] The next friend is the master of litigation (or *dominus litis* ),[17] whose function is—much like that of a non-Hohfeldian plaintiff [18] —(a) to prosecute the claim in the interest and for the benefit of a minor and (b) to appear as plaintiff in the latter's

**12.** The terms of 12 O.S.1991 § 2017(C) are:
"C. INFANTS OR INCOMPETENT PERSONS. Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. *If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."* (Emphasis added.)

**13.** "An infant cannot be sued but under the protection, and joining the name, of his guardian; for he is to defend him against all attacks as well by law as otherwise; but he may sue either by his guardian, or *prochein amy*, his next friend who is not his guardian. This *prochein amy* may be any person who will undertake the infant's cause;
* * *." [Emphasis in text, footnotes omitted.]. Thomas Cooley, 1 BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND, Ch. 17 at 464 (1765) (4th ed. by James DeWitt Andrews). A child under the age of seven is presumed to lack the discretion or capacity for negligence or wrongdoing. *McClelland v. Harvie Kothe*, Okl., 770 P.2d 569, 572 n. 8 (1989); *City of Shawnee v. Cheek*, 41 Okl. 227, 137 P. 724, 732 (1913); *Ramage Mining Co. v. Thomas*, 172 Okl. 24, 44 P.2d 19, 23 (1935); *Keck v. Woodring*, 201 Okl. 665, 208 P.2d 1133, 1135 (1949); *see also Collier v. Stamatis*, 63 Ariz. 285, 162 P.2d 125, 127–128 (1945).

**14.** *See* the pertinent terms of 12 O.S.1991 § 2017(C), *supra* note 12.

**15.** *Prochein ami* is a Norman–French expression commonly used in the law, which means next friend or guardian ad litem ( J.H.Baker, MANUAL OF LAW FRENCH 176 (2d 1989)), *who will appear as a plaintiff on behalf of the minor, because the latter cannot legally sue in his own name.* BLACK's LAW DICTIONARY 1206 (6th ed. 1990). The "*prochein ami* may be any person who will undertake the infant's cause." *Blackstone, supra* note 13 at 464. For a discussion of the term's

historical underpinnings, see *Berrain v. Katzen*, 331 Md. 693, 629 A.2d 707, 710–711 (1993). The Latin term for *prochein ami* is *amicus propinquus*.

**16.** A minor's *next friend* and *guardian ad litem* are concepts that grew out of the common-law *prochein ami*. Robert Horowitz & Seith G. Hunter, LEGAL RIGHTS OF CHILDREN 74 (1984). There is no meaningful distinction between *prochein ami*, next friend and guardian ad litem. These terms, which are used synonymously, all clearly refer to *nominal parties* and not *real parties* in interest.

**17.** For the meaning of *dominus litis*, see *supra* note 7.

**18.** A non-Hohfeldian plaintiff sues to secure judicial relief that would benefit other persons or the community as a whole. *Toxic Waste Impact Group, Inc. v. Leavitt*, Okl., 890 P.2d 906, 914 (1994)(Opala, J., concurring). There are many examples of *non-Hohfeldian plaintiffs* whose prosecution in behalf of others is authorized by the common law. (1) The *qui tam* plaintiff of the common law, who sues primarily to benefit a public entity, is typically non-Hohfeldian. *State ex rel. Trimble v. City of Moore*, Okl., 818 P.2d 889, 894 (1991); see *Flast v. Cohen*, 392 U.S. 83, 120, 88 S.Ct. 1942, 1963, 20 L.Ed.2d 947 (1968) (Harlan, J., dissenting); Scott, Standing in the Supreme Court—A Functional Analysis, 86 Har. L.Rev. 645, 660–662 n.1 (1973); Davis, Standing: Taxpayers and Others, 35 U.Chi.L.Rev. 601, 604–607 (1968); see also *Sierra Club v. Morton*, 405 U.S. 727, 732 (n. 3), 92 S.Ct. 1361, 1364–1365 (n. 3), 31 L.Ed.2d 636 (1972); *Clark v. Valeo*, 559 F.2d 642, 675 (D.C.1977). (2) In a stockholder's derivative suit the plaintiff is in the very same category as a *qui tam* plaintiff. *Warren v. Century Bankcorporation, Inc.*, Okl., 741 P.2d 846, 847, 853 (1987). (3) In actions by bailee for recovery of damage to bailed personalty, the bailee can recover for conversion of or injury to the chattel. *Hare v. Fuller*, 7 Ala. 717 (1845); *Montgomery Gas–Light Co. v. Montgomery E. Ry. Co.*, 86 Ala. 372, 5 So. 735 (1889); *Associates Discount Corp. v. Gillineau*, 322 Mass. 490, 78 N.E.2d 192, 193 (1948); Atkinson, The Real Party In Interest

name.[19] In a minor's tort case, the nominal party is also the *dominus litis*. It is the minor's legal representative who *acts as the principal vis-a-vis the counsel of record,* and who *conducts, manages and controls* the litigation.[20] The right to remain in the courtroom is vested in the *dominus litis*, the party who "calls the shots" as the principal in the action. *That person in this case is, and always has been, Cary's mother qua his next friend. She was not excluded from the courtroom.*

¶ 7 A minor, on the other hand, who is *non sui juris,* cannot qualify as principal. When an infant presses a tort claim through the next friend, a dichotomous division of the party plaintiff takes place by force of law. The split sets the *nominal party* (who brought the suit and acts as *dominus litis* ) apart from the *minor* who owns the fruits of litigation *but has neither power nor attribute*

Rule: A Plea for Its Abolition, 32 N.Y.U.L.Rev. 926, 949 (1957). (4) Court actions for recovery in behalf of an underage child. *Knowles v. Tripledee Drilling Co., Inc.,* Okl., 771 P.2d 208 (1989).

In contrast to these parties plaintiff, a *Hohfeldian plaintiff* is a legal entity seeking a judicial determination that it has "a right, a privilege, an immunity or a power" vis-a-vis the opposite party in litigation. *Toxic Waste Impact Group, supra* at 914; Jaffe, *The Citizen As Litigant In Public Actions: The non-Hohfeldian or Ideological Plaintiff,* 116 U.Pa.L.Rev. 1033 (1968).

19. Some jurisprudence seems *at first glance* to convey the erroneous notion that a person *who is non sui juris may be considered the only party to a tort action brought by the next friend.* These cases fall into two categories: (1) those that use *unguarded* and *overbroad* language in describing the role of a *next friend* (or guardian ad litem) *vis-a-vis* the minor and (2) those that thoughtlessly and without a critical examination follow the overbroad language and unwittingly give *dominus litis* status to persons who are *non sui juris.* Category 1: Many cases in this category are laden with internally inconsistent statements. They note, on the one hand, that the next friend is not technically a party in the case, but then go on to describe that person's function in terms entirely consistent with the status of a party plaintiff. *See, e.g., Thomason v. Gray,* 84 Ala. 559, 4 So. 394, 395 (1888); *Bertinelli v. Galoni,* 331 Pa. 73, 200 A. 58, 59 (1938); *Bliven v. Wheeler,* 23 R.I. 379, 50 A. 644 (1901); *Exsted v. Exsted,* 202 Minn. 521, 279 N.W. 554, 559 (1938); *Benson v. Birch,* 139 Or. 459, 10 P.2d 1050, 1051 (1932); *Slafter v. Savage,* 89 Vt. 352, 95 A. 790, 791 (1915). Category 2: Falling into this group are cases which *erroneously attribute* to the minor the status of a party plaintiff. *See, e.g., (a) Botelho v. Curtis,* 28 Conn.Supp. 493, 267 A.2d 675, 677 (1970) (the court states that a next friend "is in no sense a party to the action" and that "the real party plaintiff in the suit is still the infant"); (b) *Haines v. Fitzgerald,* 108 Pa.Super. 290, 165 A. 52, 53–54 (1933)(the court notes that when a suit is brought in the name of a minor by a next friend, "it is the infant, and not the next

friend, who is the real and proper party"). *If read literally,* the Connecticut and Pennsylvania jurisprudence would be an aberrational departure from the mainstream Blackstonian approach. *See* Blackstone, *supra* note 13. *All these imprecise statements would lead one to the patently erroneous conclusion that because the child is non sui juris and the next friend a nonparty, the lawyer in the case can be cast in the role of master of litigation.* Nothing can be farther from legal reality.

Some Oklahoma pronouncements seem encrusted with similarly imprecise language as that in category 1, *supra.* (a) In *Smittle v. Eberle,* Okl., 353 P.2d 121, 123 (1960), the court states that a parent, who, as next friend, successfully prosecutes a tort action in behalf of his child "is not regarded as a party or privy thereto" and hence is not estopped from pressing a separate action in his own name for injury to the parental status. The child in *Smittle, although not as a party,* was the only person who could lay claim to the fruits of the action. The other recovery sought by the father, which was for damage to *his parental status* (and was brought in the father's name), was correctly held *not to be duplicative* with his action for the *child's own damages.* (b) In *Webb v. Harris,* 32 Okl. 491, 121 P. 1082 (1912), the minor became of age *after* an appeal had been lodged from the justice of the peace court to the district court. There, the court opined it "cannot be controverted that in an action by the next friend on behalf of an infant, the infant is the party to the action." *Id.* at 1084. When correctly read, the quoted text means only that on reaching majority, the minor's earlier *equitable* claim to the fruits of the action would merge with the *legal* right to be *dominus litis.*

20. For the definition of *dominus litis,* see *supra* note 7; *see also Davis, supra* note 7 at 1107; *Lewis, supra* note 7 at 380; *Virginia, supra* note 7 at 363. In the ordinary litigation, the client is the principal (master or conductor of litigation) and the lawyer a mere agent. In suits brought for minors, neither the minor nor the lawyer *but rather the representative is the master.* "In any action in which a guardian ad litem or next friend sues or defends on behalf of an infant or incompetent, the representative is a nominal par-

*generally ascribable to a party.*[21] Only the *minor* —as in the *Hohfeldian* scheme [22]— qualifies to receive the fruits of the action.[23] Although the minor is the *sole* real party in interest (in whose name litigation must be brought and who would have the requisite stake in the outcome to meet standing requirements), *as a person non sui juris he is not a party to the suit but a beneficiary of its proceeds. When barred from the courtroom, Cary was six and one-half years old.* He then stood under an *irrebuttable presumption of the common law* that he lacked legal capacity.[24]

ty only; the action must be brought in the name of the real party in interest—the infant or incompetent* * * "  6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure, § 1570 (1971).

**21.** *See, e.g., State of Missouri v. Carnes,* 551 S.W.2d 272, 291 (Mo.App.1977); *Cantor v. Union Mutual Life Ins. Co.,* 547 S.W.2d 220, 225 (Mo. App.1977); *Smith v. Cowen,* 350 S.W.2d 96, 98 (Mo.App.1961); *Torkelson v. Bank of Horton,* 208 Kan. 267, 491 P.2d 954, 957 (1971); *Stoppel v. Mastin,* 220 Kan. 667, 556 P.2d 394, 399 (1976); *State of Kansas v. City of Kansas City,* 228 Kan. 25, 612 P.2d 578, 580 (1980); *Cook v. City of Evansville,* 178 Ind.App. 20, 381 N.E.2d 493, 494 (1978); *Aikens v. Alexander,* 397 N.E.2d 319, 323 (Ind.App.1979). The separation of the power to manage, conduct and control litigation from the interest in its fruits does not ordinarily occur. This is so because both the *dominus litis* power and the real party in interest status reside in the same person.

**22.** For the discussion of Hohfeldian plaintiffs, see *supra* note 18.

**23.** The "real party in interest" is the party legally entitled to the proceeds of a claim (*Aetna Cas. and Sur. Co. v. Associates Transports, Inc.,* Okl., 512 P.2d 137, 140 (1973)) or the party that has "the right to receive and control the fruits and benefits of the litigation." *Schoenfeld v. Blair,* Okl., 366 P.2d 414, 415 (1961). *See also Conley Drilling Co. v. Rogers,* 191 Okl. 667, 132 P.2d 959, 961 (1943); *C & C Tile Co. v. Indep. Sch. D. No. 7 of Tulsa Cty.,* Okl., 503 P.2d 554, 561 (1972).

**24.** By the norms of Oklahoma's common law a child under the age of 7 lacks adult capacity *as a matter of law. Knowles v. Tripledee Drilling Co., Inc.,* Okl., 771 P.2d 208, 212 (1989) (Opala, V.C.J., concurring.); *McClelland, supra* note 13 at 572; *Keck, supra* note 13 at 1135; *Ramage,*

¶ 8 Oklahoma's statutory procedural regime, which adopts the combined pre-existing notions of the English common law and the chancery practice, *plainly places the next friend in the position of a party litigant.* The terms of 12 O.S.1991 § 2017(C) [25] clearly make the next friend *dominus litis.* The money recovered in a court proceeding by a next friend on behalf of a minor beneficiary is under continued court supervision,[26] though the *dominus litis* would stand liable for costs of an action brought on behalf of a minor.[27]

*supra* note 13 at 23. When deciding whether a litigant can meaningfully assist counsel, a court will consider the litigant's *youth and maturity alone. Monteleone v. Gestetner Corp.,* 140 Misc.2d 841, 531 N.Y.S.2d 857, 861 (1988).

**25.** For the pertinent terms of 12 O.S.1991 § 2017(C), see *supra* note 12.

**26.** The pertinent terms of 12 O.S.Supp.1996 § 83 are:

"A. *Moneys recovered in any court proceeding by a next friend or guardian ad litem for or on behalf of a person who is less than eighteen (18) years of age* in excess of One Thousand Dollars ($1,000.00) over sums sufficient for paying costs and expenses including medical bills and attorney's fees *shall be deposited, by order of the court, in one or more federally insured banking, credit union or savings and loan institutions, or invested by a trust department of a banking institution, approved by the court;* provided, that the court may approve a structured settlement, by the terms of which the proceeds of a settlement may be invested by the plaintiff or the defendant in an annuity to be paid to or for the benefit of the minor by an insurance company licensed in this state.

B. *Until the person becomes eighteen (18) years of age, withdrawals of moneys from such account or accounts shall be solely pursuant to order of the court made in the case in which recovery was had.*

C. When an application for the order is made by a person who is not represented by an attorney-at-law, the judge of the court shall prepare the order. * * * " (Emphasis added.)

**27.** The terms of 23 O.S.1991 § 103 are:

"In any action for damages for personal injury except injury resulting in death, or in any action for damages to personal rights the court shall, subsequent to adjudication on the merits and upon motion of the prevailing party, determine whether a claim or defense asserted in the action by a nonprevailing party was asserted in bad faith, was not well grounded in fact,

¶ 9 In light of the English antecedents adopted by the current statutory scheme, Cary *cannot be viewed as a true party plaintiff. A child under the age of 7, Cary stood at nisi prius as a nonentity suing through another who, as his legal representative, was the true in-court party and dominus litis.*[28]

### ¶ 10 B.

### *No Prejudice From The Minor's Exclusion Can Be Shown Under Any Constitutional or Statutory Provision*

¶ 11 Prejudice is presumed when clear constitutional rights are violated.[29]  No prejudice can be presumed from the exclusion of an infant who does not stand in the legal status of a party plaintiff.  Nor can the right to courtroom presence attach to a child who is represented by *dominus litis.*  Even if Cary were a party under the circumstances shown by the record in this case, no constitutional, statutory or common-law claim to protection against exclusion would avail.

¶ 12 The record conclusively demonstrates that Cary was *not* to be called as witness in the lawsuit.  His mother is bound here by the pretrial order's recitation to that effect.[30]  At the critical stage of the nisi prius proceedings—the hearing on the defendant's motion to exclude—the *prochein ami* adduced no evidence that would show the necessity for the child's presence in the courtroom.

¶ 13 Arguments in the briefs that the child's attendance at trial would have had a salutary effect on the veracity of witnesses may never be permissibly rested, as they are sought to be here, solely on a lawyer's "mouthings"— *i.e.* unsworn statements of a forensic advocate.[31]  Neither is there testimony in the record to support the next friend's theory that Cary was needed for *in-trial assistance.*  In short, counsel ascribes prejudice to speculation rather than fact.  The *facts plainly refute all conjectural theories for reversal.*  The record does not disclose how a witness' fabrication would ever have been deterred by the presence of a child whose inability accurately to recount the circumstances leading to his injury was known to opposing counsel and to all witnesses in the case.  The mother seeks retrial *based solely on pure speculation* about Cary's expected in-trial assistance (other, of course, than that to be supplied by his sympathy-arousing countenance).  Pure hindsight and afterthought drive every point argued for reversal.

or was unwarranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.  Upon so finding, the court shall enter a judgment ordering such nonprevailing party to reimburse the prevailing party an amount not to exceed Ten Thousand Dollars ($10,000.00) for reasonable costs, including attorneys fees, incurred with respect to such claim or defense."

**28.**  *Supra note 24.  A minor with beneficial interest in the proceeds of a tort claim can control neither the course of litigation nor the fruits to be received.  Because he lacks power over the action during its pendency and over its fruits after termination, he may not be regarded as standing in the status of a party litigant.  Maryland Cas. Co. v. King,* Okl., 381 P.2d 153, 154 (1963); *Stinchcomb v. Patteson,* 66 Okl. 80, 167 P. 619, 620 (1917).

**29.**  When the violation of one's constitutional rights is so fundamental to our democratic system, prejudice is presumed.  *See, e.g., Glasser v.*

*United States,* 315 U.S. 60, 75–76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942); *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991), reh. den. 500 U.S. 938, 111 S.Ct. 2067, 114 L.Ed.2d 472 (1991).  Errors which undermine the basic fairness of the legal process require no proof of prejudice.  *See Satterwhite v. Texas,* 486 U.S. 249, 256, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988) ("some constitutional violations . . . by their very nature cast so much doubt on the fairness of the trial process that, as a matter of law, they can never be considered harmless"); *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967) ("some constitutional rights are so basic to a fair trial that *their infraction can never be treated as harmless error"* (emphasis mine)).

**30.**  *Supra* note 8.

**31.**  *See, e.g., State ex rel. Okla. Bar Ass'n v. Lacoste,* Okl., 813 P.2d 501, 507 (1991)(Opala, C.J., dissenting).

## ¶ 14 III.

**EVEN IF CARY WERE *SUI JURIS* AND A TRUE PARTY PLAINTIFF IN THIS CASE, NATIONAL JURISPRUDENCE DECLARES THAT A NISI PRIUS ORDER PROHIBITING A LITIGANT'S COURTROOM PRESENCE *DURING THE LIABILITY PHASE* OF TRIAL IS ERROR–FREE IF (1) THE LITIGANT'S APPEARANCE OR CONDUCT IS LIKELY TO *PREJUDICE* THE DEFENDANT, (2) THE LITIGANT'S TESTIMONIAL PARTICIPATION IS NEITHER NECESSARY NOR EXPECTED AND (3) THE LITIGANT CANNOT ASSIST COUNSEL IN ANY MEANINGFUL WAY**

¶ 15 *Even if Cary were sui juris and a true party plaintiff,* he would have *no unconditional right* to be present during all courtroom proceedings. A rich body of national jurisprudence, which the court chooses to ignore today, teaches that while generally *every litigant* may press a constitutionally undergirded demand to be present in the courtroom during a proceeding in a civil action, no claim to one's courtroom presence is absolute.[32] It should be weighed against the opposite party's right to a fair trial—one that is free of prejudice likely to be engendered in the triers of fact.[33] In assaying whether a trial judge—exercising sound discretionary control over the proceedings—may sustain a defendant's motion to forbid a litigant's courtroom presence *during the liability phase of a bifurcated trial,* courts engage in a three-step analysis. *First,* the nisi prius judge must determine if a litigant's *appearance or conduct* is likely to prejudice the jury against a defendant who seeks to bar that litigant's attendance. *Second,* if prejudice be found probably to result from a litigant's presence, the court must *next* direct its probe to whether the excluded litigant's testimony is either expected or necessary in light of that person's ability to comprehend the proceedings about to be conducted. *Finally,* the court must assess the negative legal fallout, if any, from the excluded person's absence upon the quality of process that is that person's due. If the excluded litigant's presence is not critical to his effective representation at trial, there is less or little prejudice to the fairness factor from that person's absence.[34] A litigant's presence could not be viewed as critical if he/she has no capacity to understand the proceedings and to assist counsel in their conduct. The three-step inquiry crafted by the national jurisprudence, which stands rejected today, is consistent with that employed by criminal process as a test for assessing a defendant's fitness to stand trial. *In short, if unfit to assist with trial conduct, a civil litigant, when excluded from the proceedings, suffers no legally cognizable detriment.*[35] *I would so hold today.*

¶ 16 There would be here *no* basis for a litigant's exclusion if there were *no bifurca-*

**32.** *Maloney v. Shoparama Inv. Associates,* 144 A.D.2d 112, 534 N.Y.S.2d 451, 452 (1988); *Matter of Donna K.,* 132 A.D.2d 1004, 518 N.Y.S.2d 289, 290 (1987). The question of a *party's* right to be present in the courtroom during a civil trial was not dispositive in *Clark v. Continental Tank Co.,* Okl., 744 P.2d 949, 953 (1987). Rather, at issue in that case was the trial court's discretion to allow an expert witness' courtroom presence while others gave testimony in the case.

**33.** "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). An impartial jury is, of course, an indispensable ingredient of a fair trial, which is assured by the fundamental law's due process guarantee. *Agee v. Gant,* Okl., 412 P.2d 155, 162 (1966).

**34.** *Reems v. St. Joseph's Hospital and Health Center,* 536 N.W.2d 666, 669 (N.D.1995); *Province v.*

*Center For Women's Health and Family Birth,* 25 Cal.Rptr.2d 667, 676, 20 Cal.App.4th 1673, 1687 (1994); *Caputo v. Joseph J. Sarcona Trucking Co., Inc.,* 204 A.D.2d 507, 508, 611 N.Y.S.2d 655, 656 (1994); *Bremner By and Through Bremner v. Charles,* 312 Or. 274, 821 P.2d 1080, 1086 (1991); *Gage v. Bozarth,* 505 N.E.2d 64, 69 (Ind. App.1987); *Morley v. Superior Court of Arizona, Etc.,* 131 Ariz. 85, 638 P.2d 1331, 1334 (1982); *Dickson v. Bober,* 269 Minn. 334, 130 N.W.2d 526, 528 (1964)(syl.1); *see also Gonzalez–Marin v. Equitable Life Assur. Soc.,* 845 F.2d 1140, 1146 (1st Cir.1988); *Helminski v. Ayerst Lab., a Div. of A.H.P.C.,* 766 F.2d 208, 218 (6th Cir.1985); A.P.Grunes, *Exclusion of Plaintiffs From The Courtroom In Personal Injury Actions: A Matter of Discretion or Constitutional Right?,* 38 Case W.Res.L.Rev. 387 (1987/88).

**35.** 22 O.S.1991 § 1175.1. *See Roberson v. State,* Okl.Cr., 456 P.2d 595, 600 (1968), which teaches that a criminal defendant's claim of incapacity calls for a pretrial jury inquest.

*tion order in the case.* Where issues of liability and damages are to be tried together, a litigant's presence in the courtroom should not be restricted.[36] *It is for this reason that the case authority the court relies upon to craft its rigid doctrine against exclusion is utterly inapposite.* In the cases cited by the court either (1) no bifurcation order was in place[37] or (2) there was a finding that the affected litigant's courtroom presence would not be prejudicial to the defendant.[38]

¶ 17 If no prejudice to the party seeking a litigant's exclusion be shown, *the inquiry must come to an end.* This is so because the movant has failed in its burden of production and persuasion.[39] On the other hand, should the judge conclude, as he did in this case, that a litigant's presence *would* be prejudicial to the opposing party's right of fair trial, the judge must conduct a further inquiry to assess the excluded party's *detriment* from exclusion.[40] In making this evaluation the court is called upon to balance prejudice divinable from adduced proof against the counterweight of benefit to be derived from the excluded party's presence.[41] When the litigants' respective interests are placed in balance and so considered, a trial court's

exclusion ruling cannot be said to be abusive of its discretion.[42]

¶ 18 A defendant who claims prejudicial effect from a litigant's appearance before the jury bears the burden of persuasion when moving for an exclusion order.[43] A formal hearing on the motion is not always necessary. The decision need only be reached *in the course of applying informed discretion that is both reasonable and grounded in evidence.*[44] *This process took place in this case.*

### ¶ 19 IV.

## TODAY'S OPINION CRAFTS A RULE THAT VIOLATES ONEOK'S RIGHT TO AN IMPARTIAL JURY, GUARANTEED BY BOTH ART. 2, § 7, OKL.CONST.,[45] AND THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION[46]

¶ 20 In *Helminski v. Ayerst Lab., a Div. of A.H.P.C.,*[47] the U.S. Court of Appeals for the Sixth Circuit grounded the *discretionary rule* for courtroom exclusion on a tort defendant's fundamental-law interest in a fair trial, which for a state-court proceeding *implicates the due process guarantees in the Fourteenth Amendment to the United States Constitution*[48] *as well as the provisions of Art. 2,*

**36.** *Florida Greyhound Lines v. Jones,* 60 So.2d 396, 397 (Fla.1952); *Bryant v. Kansas City Rys. Co.,* 286 Mo. 342, 228 S.W. 472, 475 (1921).

**37.** *Florida Greyhound, supra* note 36 at 397; *Chicago Great Western Ry. Co. v. Beecher,* 150 F.2d 394 (8th Cir.1945); *Anderson v. Sears, Roebuck & Co.,* 377 F.Supp. 136 (E.D.La.1974); *Mason v. Moore,* 226 A.D.2d 993, 641 N.Y.S.2d 195 (1996).

**38.** *Marks v. Mobil Oil Corp.,* 562 F.Supp. 759, 768 (E.D.Pa.1983).

**39** *Morley, supra* note 34 at 1334.

**40.** *Helminski, supra* note 34 at 218.

**41.** *In Re Richardson–Merrell, Inc. "Bendectin" Products Liability Litigation,* 624 F.Supp. 1212, 1224 (S.D.Ohio 1985), aff'd. in relevant part, 857 F.2d 290 (6th Cir.1988), cert. denied, 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

**42.** *Morley, supra* note 34 at 1334.

**43.** *Gonzalez–Marin, supra* note 34 at 1146.

**44.** *Bremner, supra* note 34 at 1086.

**45.** For the pertinent terms of Art. 2, § 7, Okl. Const., see *supra* note 2.

**46.** For the pertinent terms of the Fourteenth Amendment, U.S. Const., *see supra* note 3.

**47.** *Helminski, supra* note 34. In *Helminski,* the court distilled from the then-extant state jurisprudence a test very much like that I would adopt today, 766 F.2d at 218. The pertinent text of that opinion states:

"Should the district court determine that the party's mere presence would be prejudicial, the court must next consider whether the party can understand the proceedings and aid counsel. If the trial court concludes that the party can comprehend the proceedings and assist counsel in any meaningful way, the party cannot be involuntarily excluded regardless of prejudicial impact; in such a case, cautionary instructions will protect the interests of the defendant in a fair trial."

**48.** *Helminski, supra* note 34 at 217, (quoting from *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 554, 104 S.Ct. 845, 849, 78 L.Ed.2d 663 (1984)).

§ 7, *Okl. Const.* Any litigant who presses for an exclusion order and satisfies the applicable three-part test implicitly invokes protections that have state and federal constitutional underpinnings. The course I would chart today calls for invocation of the described three-step analysis. Harsh though it may seem to some, its strictures trace with fidelity the beaten path of constitutional jurisprudence. *Fundamental fairness in litigation process cannot be afforded except within a framework of orderly procedure.* Chaos, caprice and *ad hoc* pronouncements would inevitably follow the slightest departure from an even-handed procedural regime.[49]

¶ 21 V.

## THE COURT TODAY INCORRECTLY RE-WEIGHS RECORD EVIDENCE BEFORE THE TRIAL COURT; THAT EVIDENCE SUPPORTS THE NISI PRIUS EXCLUSION ORDER

¶ 22 If an issue rests in the trial court's discretion, a ruling upon it will *not* be disturbed unless that discretion is found to have been *abused.*[50] Misuse of judicial power *cannot be presumed.*[51] Except where abuse is affirmatively shown, a reviewing court will not disturb a nisi prius ruling. To reverse a trial court order on abuse-of-discretion standard, it must appear that the decisionmaker reached a clearly erroneous conclusion that is contrary to sound principles of reason and evidence.[52] The conduct of a jury trial lies within the sound discretion of the nisi prius judge,[53] and the trial court is duty-bound to withhold from the triers any material

deemed prejudicial.[54] In *every* trial in which corporate defendants stand pitted against children, the jury might easily be swayed in favor of an underage person whose countenance is so seriously disfigured.[55]

¶ 23 The court today turns a blind eye to the district court record. Neither party disputes Cary's extensive disfigurement from the fire, and neither party claims his presence was *critical to the fairness of the jury contest.* There was *testimony* that Cary— six years old at the time of trial—*remembered little* about the circumstances surrounding the harm-dealing occasion *and, at different times, reported widely varying accounts* of the event. *He was neither necessary nor expected to be called as a witness.* I would hence hold that the trial court's ruling, which was within reason and based on evidence, *cannot* be termed abusive of its discretion. The three-step analysis I counsel for adoption today will ensure a balanced nisi prius consideration of litigants' competing fundamental-law interests. It also militates strongly for affirmance of the exclusion ruling.

¶ 24 The *court's opinion appears grossly unfair* in yet another respect. Even though the rule announced by the opinion was unknown at the time of this trial, today's pronouncement remands this cause for retrial but does not afford the defendant *any* opportunity to defend, in a post-remand evidentiary hearing, the correctness of the earlier exclusion when measured by the newly-developed standard.

**49.** "* * * *It is procedure that spells much of the difference between rule by law and rule by whim or caprice.* Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law. * * * "* (Emphasis added.) *Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring).

**50.** *Eskridge v. Ladd,* Okl., 811 P.2d 587, 590 (1991); *In Re Crane's Estate,* 201 Okl. 354, 206 P.2d 726, 729 (1949).

**51.** *Eskridge, supra* note 50 at 590.

**52.** *Oklahoma Turnpike Authority v. Asher,* Okl., 863 P.2d 1205, 1207 (1993); *Abel v. Tisdale,* Okl.,

619 P.2d 608, 612 (1980); *Crane's Estate, supra* note 50 at 729; *Bennett v. Kiowa County Bank,* 44 Okl. 575, 145 P. 807, 808 (1915).

**53.** *Nail v. Oklahoma Children's Memorial Hosp.,* Okl., 710 P.2d 755, 760 (1985).

**54.** *Gulf, C. & S.F. Ry. Co. v. Smith,* Okl., 270 P.2d 629, 633 (1954); *F.W. Woolworth Co. v. Davis,* 41 F.2d 342, 346 (10th Cir.1930) cert. denied, 282 U.S. 859, 51 S.Ct. 33, 75 L.Ed. 760 (1930).

**55.** *See Richardson–Merrell, supra* note 41 at 1224.

## ¶ 25 VI.

### THIS COURT MAY NOT REACH—EVEN IN DICTA—THE ISSUE WHETHER THE NISI PRIUS EXCLUSION ORDER VIOLATES FEDERAL DISABILITIES DISCRIMINATION LAWS

¶ 26 On appeal the mother complained *for the first time* that the trial court's exclusion order violates the ADA.[56] Because she did not press this issue at nisi prius, neither the appellate nor this court (on certiorari) may reach it on review.[57] Courts are not allowed to forecast what they might do about an issue that is not before them.[58] Prudence dictates that the court not reach today—either directly or in dicta—the abstract question whether the ADA could have been effectively invoked to support the plaintiff's quest that Cary be personally present at the liability stage of the trial.[59]

¶ 27 *Were the court* affirming a nisi prius *refusal* to ban Cary from the courtroom, its ruling could be rested on *any applicable* theory consistent with the record presented for our review. A *reversal*, on the other hand, may *not* be grounded either on some theory invoked *sua sponte* or on *any pressed* argument which lacks *record support.*[60]

### SUMMARY

¶ 28 The court pronounces today a *sweeping and new* rule of exclusion—that *a litigant may not be barred from the courtroom solely because of physical appearance.* Even though this standard was unknown when the case came on for trial, the court orders a retrial but does not afford ONG (the defendant below) a post-remand opportunity to defend the earlier exclusion in an evidentiary proceeding to be conducted under the newly-promulgated standard.

¶ 29 Although Cary undoubtedly holds the *sole interest in the fruits of this action,* he is not a party to the suit. As a child under the age of 7 at the time of trial, he lacked adult capacity *as a matter of law.* A person *non sui juris,* who could neither manage, conduct nor control the lawsuit, Cary is best to be described as *no more than a beneficiary of the litigation's fruits.*[61]

¶ 30 No prejudice can be shown from this minor's courtroom exclusion. This is so because the next friend attended all court proceedings *as the law's sole principal* in this litigation. No record support can be garnered for the argument that would rely for reversal on the child's *expected in-trial assistance,* a point which is soundly refuted by the record.

¶ 31 If Cary were *sui juris* and a true party plaintiff with *dominus litis* power, I would apply here the three-prong analytical pattern to be gleaned from the national jurisprudence. Employing that test, I would hold that Cary's exclusion from the courtroom—during the bifurcated liability phase—is amply supportable by the trial court's finding, based on evidence before it, that Cary's disfigured countenance would prejudice the jury against ONEOK. When cast upon the canvas of the gauge I would adopt, that ruling

56. *Supra* note 1.

57. *Bane v. Anderson, Bryant & Company,* Okl., 786 P.2d 1230, 1237 (1990); *Mills v. Mills,* Okl., 512 P.2d 143, 145 (syl.6)(1973).

58. *Hughey v. Grand River Dam Authority,* Okl., 897 P.2d 1138, 1143–1144 (1995). *"Every judgment must be read as applicable to the particular facts proved or assumed to be proved,* since the generality of the expressions which may be found there are not intended to be expositions of the whole law but govern and are qualified by the particular facts of the case in which such expressions are to be found." (Emphasis added.) Lord Halsbury's famous passage in *Quin v. Leathem* [1901] A.C. 495 at p. 506, quoted in RUPERT CROSS, PRECEDENT IN ENGLISH LAW 37 (1961).

59. *Hughey, supra* note 58 at 1143–1144; *Northeast Okl. Elec. v. Corporation Com'n,* Okl., 808 P.2d 680, 683 (1991); *Westinghouse Elec. Corp. v. Grand River Dam Auth.,* Okl., 720 P.2d 713, 718 (1986); *Traders Compress Co. v. Board of Review, Okl. Employment Security Commission,* 203 Okl. 564, 224 P.2d 268 (1950). *See also Application of Goodwin,* Okl., 597 P.2d 762, 765 n. 8 (1979).

60. *Wright v. Grove Sun Newspaper Co., Inc.* Okl., 873 P.2d 983, 992 (1994); *Willis v. Nowata Land and Cattle Co.,* Okl., 789 P.2d 1282, 1286–1287 (1990); *Utica Nat'l Bank and Trust Co. v. Assoc. Prod. Co.,* Okl., 622 P.2d 1061, 1066 (1981); *Holloway v. Ward,* 84 Okl. 247, 203 P. 217, 219 (1922).

61. *See* explanation *supra* note 28.

reflects a proper balancing of Cary's right to be present at the liability stage of trial against ONEOK's constitution-anchored claim to an impartial and emotionally uncharged jury. The mother's failure *first* to raise in the trial court the ADA's impact on its exclusion order makes her later-interposed challenge untimely for reviewing consideration, both appellate and on certiorari.[62]

¶32 Today's pronouncement plainly *offends* two statutory provisions that make reversal of a judgment *impermissible* unless the error found affects the trial's fundamental fairness.[63] Because the record here is barren of the requisite taint, I would affirm the trial court's judgment on jury verdict against Cary's interest.

**62.** *Bane, supra* note 57 at 1237; *Mills, supra* note 57 at 145 (syl.6).

**63.** The terms of 12 O.S.1991 § 78 are:
The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.
The terms of 20 O.S.1991 § 3001.1 are:

No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or for error in any matter of pleading or procedure, unless it is the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.